**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

CARLA OAKLEY, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.                                                                    Case No. 1:21-cv-00021-DAF

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
and PERFORMANT RECOVERY, INC.,

      Defendants.

**PLAINTIFF'S OPPOSITION TO RULE 12(B)(6) MOTIONS FILED BY DEFENDANT**
**COAST PROFESSIONAL AND THE PERFORMANT DEFENDANTS**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

   A.  The Parties ....................................................................................................1

   B.  Plaintiff's State Law Claims .........................................................................1

   C.  Defendants' Requests for Dismissal .............................................................3

II.  BACKGROUND ....................................................................................................4

   A.  The Federal Student Loan Collection Industry .............................................4

   B.  Defendants' Attempt to Collect a Debt from Plaintiff .................................5

   C.  Posture of the Case .......................................................................................5

III.  ARGUMENT .........................................................................................................6

   A.  Plaintiff has Complied with the WVCCPA Right to Cure Provision............6

   B.  The Higher Education Act Does Not Preempt Plaintiff's Claims..................8

     i.  Federal Preemption......................................................................................8

     ii.  Defendants' Preemption Argument ............................................................9

     iii.  The HEA Does Not Expressly Preempt Plaintiff's Claims. ................................10

       a.Scope of WVCCPA § 46A-2-127(d), (f), (h): Prohibiting Misrepresentations and False Impressions Made During Debt Collection ........................................................10

       b.Congressional Intent/Scope of HEA § 1091a(b): Preempting State Laws Which Prevent Recovery of Student Loan Obligations. ................................................................11

       c.Prohibiting Misrepresentations and False Impressions in Debt Collection is Not within the Scope of Clearing State Law Hurdles to Enforcement of Obligations to Repay. ....................11

     i.  The HEA Does Not Conflict Preempt Plaintiff's Claims....................................13

       a. No Direct Conflict: It is Possible to Comply with Both the HEA and the WVCCPA..........13

       b. No Obstacle Preemption: The WVCCPA Does Not Interfere with Congressional Objectives...............................................................................................14

   C.  Defendants' Practices Violate the WVCCPA, an Analysis Requiring Factual Inquiry.............16

     i.  Defendants Falsely Represented the Character and Amount of the Debt............................16

     ii.  Whether the Letter is Misleading or Deceptive is a Question of Fact..................................19

   D.  Defendant Coast is Liable for the Acts of its Subcontractors.................................19

IV.  CONCLUSION....................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Pa. Higher Educ. Assistance Auth.*,
    237 W. Va. 312 (W. Va. 2016) ............................................................. 5, 9, 12, 14

*Adkins v. Midland Credit Mgmt. Inc.*,
    No. 5:17-cv-04107, 2019 WL 1370872 (S.D. W. Va. Mar. 26, 2019) ...................................7

*Bible v. United Student Aid Funds, Inc.*,
    799 F.3d 633 (7th Cir. 2015) ...................................................... 13

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ...................................................... 9, 12

*Cliff v. Payco General Am. Credits, Inc.*,
    363 F.3d 1113 (11th Cir. 2004)...................................................... 13

*College Loan Corp. v. SLM Corp.*,
    396 F.3d 588 (4th Cir. 2005) ............................................. 8, 13, 14, 15

*F.D.I.C. v. Baldini*,
    983 F. Supp. 2d 772 (S.D.W. Va. 2013) ................................................6

*Fanary v. Equifax Info. Servs.*,
    No. 5:20-cv-00169, 2020 WL 4906002 (S.D. W. Va. Aug. 20, 2020) ...................................8

*Fleet v. Webber Springs Owners Assoc., Inc.*,
    772 S.E.2d 369 (W. Va. 2015) ...................................................... 16

*Francis v Gen. Rev. Corp.*,
    No. 18-cv-6955, 2020 WL 4586392 (E.D.N.Y. Aug. 10, 2020) ...........................................16

*Lawson-ross v. Great Lakes Higher Educ. Corp.*,
    955 F.3d 908 (11th Cir. 2020) ...................................................... 11

*McComas v. Fin. Coll. Agencies*,
    No. 2:96-0431, 1997 WL 118417 (S.D.W. Va. Mar. 7, 1997) ............................. 8, 12, 14, 19

*McMillan v. Collection Professionals, Inc.*,
    455 F.3d 754 (7th Cir. 2006) ...................................................... 19

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
    928 F.3d 639 (7th Cir. 2019) ...................................................... 12

*United States ex. rel. PCA Integrity Assocs, LLP v. NCO Fin. Sys., Inc.*,
    Case No. 15-750, 2020 WL 686009 (D. D.C. Feb. 11, 2020) ...............................................20

*Reizner v. Pioneer*,
    No. 18-16014, 2019 WL 1569824 (D. N.J. Apr. 11, 2019)...................................................16

*Sanders v. Georgia-Pac. Corp.*,
    225 S.E.2d 218 (W. Va. 1976)...............................................................................................20

*Sipple v. Starr*,
    520 S.E.2d 884 (1999)............................................................................................................20

*Smith v. Collection Technologies, Inc.*,
    Case No. 2:15-cv-6816, 2016 WL 1169529 (S.D.W. Va. Mar. 22, 2016).........................8, 10

*Snuffer v. Great Lakes Educational Loan Services, Inc.*,
    97 F. Supp. 3d 827 (S.D.W. Va. 2015) .................................................................................15

*Soyinka v. Franklin Collection Service, Inc.*,
    472 F. Supp. 3d 463 (N.D. Ill. 2020).....................................................................................19

*Student Loan Servicing All. v. District of Columbia*,
    351 F. Supp. 3d 26 (D. D.C. 2018) ........................................................................................15

*Tipton v. Secretary of Educ. of U.S.*,
    768 F. Supp. 540 (1991) .........................................................................................................12

*Winebarger v. Penn. Higher Educ. Assistance Agency*,
    411 F. Supp. 3d 1070..............................................................................................................12

**Statutes**

20 U.S.C. § 1078(c)(2) ...................................................................................................................14

20 U.S.C. § 1078(d) .......................................................................................................................11

20 U.S.C. § 1087f(2) ........................................................................................................................4

20 U.S.C. § 1091a(a)(2) .................................................................................................................11

20 U.S.C. § 1091a(b)(1) ........................................................................................................*passim*

20 U.S.C. § 1091a(b)(2) .................................................................................................................11

28 U.S.C. § 1332(d) .........................................................................................................................6

Fair Debt Collection Practices Act .................................................................................................16

HEA § 1091a .............................................................................................................................11, 12

HEA § 1091a(b) .................................................................................... 10, 11, 13

HEA § 1098g .......................................................................................... 9, 10, 12

Higher Education Act ...................................................................................... *passim*

W.Va. Code § 46A-5-108 .......................................................................................... 8

W.Va. Code § 46A-5-108(a) .......................................................................................... 6

West Virginia Consumer Credit and Protection Act .................................................... 12

WVCCPA § 46A-2-127(d) ................................................................................ 2, 18, 19

WVCCPA § 46A-2-127(f) ...................................................................................... 2, 18

WVCCPA § 46A-2-127(h) .......................................................................................... 2

**Other Authority**

*Road to Relief*, Student Loan Borrower Assistance National Consumer Law
    Center (Nov. 2020) .......................................................................................... 1

# I.   INTRODUCTION

Over $122 million in federal student loans are currently in default.[1] Even before the added financial strain caused by the Covid-19 pandemic, one in four borrowers was in serious delinquency on their student loan debt. Student loan debt collection therefore impacts a large number of individuals in every state, including West Virginia. Ensuring that tactics used by student loan debt collectors are transparent and fair is in line with the WVCCPA's goal of protecting consumers.

## A.  The Parties

Plaintiff Carla Oakley is a West Virginia resident seeking state law protection from abuses in the collection of a defaulted federal student loan. (First Amended Complaint "FAC" ¶ 24). Defendant Coast Professional and the Performant Defendants[2] are private collection agencies that collect defaulted federal student loans, including Plaintiff's defaulted loan.  (FAC ¶¶ 6,8). Defendants' compensation for this work amounts to a percentage of anything *collected* towards consumers' Loans. (FAC ¶¶ 14,19).

## B.  Plaintiff's State Law Claims

On behalf of herself and similarly situated West Virginians, Plaintiff challenges Defendants' practice of representing to unsuspecting consumers that the maximum amount of collection fees Defendants could ever possibly recover from consumers is now "due and payable" before even $1 in collection fees is actually due. In Plaintiff's case, in a July 12, 2019 collection letter ("Collection Letter," Exhibit A), Defendants sought a whopping $11,431.47 in collection fees on top of a $63,671 balance, representing that *the Department of Education indicated* the entire $75,223.17 was "due and payable" even though NO collection fee was actually due at the time. (FAC ¶¶ 38, 71). Falsely stating the Department of Education ("ED") indicated the "entire balance" was "due and payable", when in fact this figure was

---

[1] *Road to Relief*, Student Loan Borrower Assistance National Consumer Law Center (Nov. 2020),
https://www.nclc.org/images/pdf/student_loans/report-road-to-relief.pdf.
[2] Plaintiff brings claims against both Performant Recovery, Inc. and its parent company, Performant Financial Corp.

calculated by Defendants and Defendants alone, added unwarranted credibility to the demands made in the Collection Letter and was designed to intimidate unsophisticated borrowers into making larger payments than they otherwise would or could afford to make. (FAC ¶¶ 39, 72). In reality, collection fees are only earned by PCAs and charged to borrowers when borrowers make payments on the account and would decrease dramatically if a reduced settlement was reached. (FAC ¶¶ 33-34). Defendants claim the Collection Letter is not confusing due to an inconspicuous sentence on the back of the Collection Letter written in small font and mixed in with state-law debt collection disclosure language. But if the consumer even noticed this sentence, which is unlikely since it was overshadowed by the other information on the page, it would only have added confusion. While the sentence on the back of the Collection Letter stated, "the amount of the [collection agency] fee may decrease at the time of payment depending on the amount that is ultimately paid," a sentence on the front of the Collection Letter stated, "[b]ecause of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater." When read together, these statements leave consumers in the dark as to what factors will increase or decrease the amount they must pay to resolve the debt.

Plaintiff alleges that by misrepresenting the collection fees owed "as of the date of this letter" and the amount currently "due and payable," Defendants violated the WVCCPA § 46A-2-127(d) and (h), which prohibit false representations or implications about the character, extent or amount of a claim against a consumer as well as any false representation or false impression about the status or true nature of the services rendered by Defendants as debt collectors. (FAC ¶¶ 65-69). Plaintiff also alleges that Defendants' use of written communication to falsely represent or imply that ED calculated, or at a minimum, approved of the amounts in the Collection Letter violated WVCCPA § 46A-2-127(f) because it created a false impression the government, via ED, which can garnish wages for non-payment,

demanded the amount in the Collection Letter when the "current balance" portrayed as "due and payable" was calculated solely by Defendant. (FAC ¶¶ 39,72).

## C.  Defendants' Requests for Dismissal

Defendants' 12(b)(6) motions to dismiss ("Motions") raise four bases for dismissal. Defendants first argue that Plaintiff's claims seek to prevent Defendants from charging statutorily required collection fees and that the claims are therefore preempted by the regulatory framework governing the federal student loan system, the Higher Education Act ("HEA"). In fact, nothing in the FAC indicates Plaintiff disagrees with Defendants' right and obligation to assess "reasonable collection costs" on defaulted student loan accounts. Plaintiff only challenges the misleading manner in which Defendants chose to present those fees and costs in communications with consumers and its actions of trying to collect a fee that was not yet due, an activity well outside the scope of the HEA.

Defendants next contend that the communications at issue did not make any false representations under the WVCCPA. However, as explained herein, courts considering similar claims have found allegations that a debt collector sought a not yet charged, incurred or due contingent fee sufficient to survive a motion to dismiss.

Third, Defendants raise alleged deficiencies with Plaintiff's compliance with the WVCCPA's right to cure requirement. This request should be rejected because (1) Defendants are closely related entities which should have been aware of their involvement in this matter even before being joined as parties; (2) Plaintiff rectified any potential deficiency by sending the allegedly missing right to cure notices; and (3) dismissal based on mere deficiencies in right to cure notices is disfavored.

Fourth and finally, Coast's argument that it cannot be held liable because it is not the entity that physically sent the Collection Letter to Plaintiff must be rejected because it lacks any legal justification

and because Plaintiff has met her prima facie burden of establishing a principle/agent relationship that could result in vicariously liability of Coast for the actions of its subcontractors.

## II.    BACKGROUND

### A.  The Federal Student Loan Collection Industry

To manage the massive portfolio of defaulted federal student loan debt the ED, through a government bidding process, hires student loan services, to service loans in good standing, as well as private collection agencies ("PCAs") to carry out collection activities on defaulted student loans. (FAC ¶¶ 12-13). Coast is one of the PCAs participating in the bidding process. (FAC ¶ 6). ED pays its PCAs, including Coast, a fixed commission on payments made by borrowers or by resolving the defaulted debts. Coast in turn awards contingency-based compensation to its subcontractors, including the Performant Defendants. (FAC ¶ 14).

ED sets forth the procedures and policies to be utilized by its PCAs in a document titled the PCA Procedures Manual for Private Collection Agencies contracted by Federal Student Aid ("PCA Manual").[3] (FAC ¶ 15). According to the PCA Manual, when ED places a student loan account with a PCA, the order it issues the PCA includes only the outstanding principal and interest of the debt. (FAC ¶ 16a). The PCA manual instructs collection agencies, "DON'T tell a borrower FSA [Federal Student Aid] requires something when it is actually the PCA's practice." (FAC ¶ 16d).

Federal student loans are governed by the HEA, which authorizes the Secretary of Education to "enter into contracts for . . . the servicing and collection of loans made or purchased under this part." 20 U.S.C. § 1087f(2). As explained by the National Consumer Law Center, "[a]ccording to industry insiders, the Department contract is 'the most sought after contract within this industry' because of the ever-increasing volume of debt that is extremely difficult to discharge in bankruptcy." National

---

[3]The PCA Manual can be found at: https://www.governmentattic.org/33docs/EDpcaManual_2016.pdf

Consumer Law Center: Pounding Student Loan Borrowers (Sept. 2014). Importantly, "it is well-established that there is no private cause of action under the [HEA]." *Adams v. Pa. Higher Educ. Assistance Auth.*, 237 W. Va. 312, 317 (W. Va. 2016).

**B.  Defendants' Attempt to Collect a Debt from Plaintiff**

ED hired Coast to collect Plaintiff's defaulted federal student loan. (FAC ¶ 24). In turn, Coast subcontracted that collection activity to Defendant Performant. (FAC ¶ 25). The Collection Letter dated July 12, 2019, contained a table substantially similar to the table below:

| ACCOUNT NO. | PRINCIPAL BAL | INTEREST |
|---|---|---|
| xxxxxx5546 | $51,003.10 | $12,758.20 |
| PENALTY CHARGES | FEES & COSTS | CURRENT BALANCE |
| $0.00 | $11,431.47 | $75,223.17 |
| DO NOT SEND CASH MAKE CHECKS PAYABLE TO: | AMOUNT PAID | |

U.S. DEPARTMENT OF EDUCATION. USE ACCOUNT NUMBER LISTED ABOVE ON YOUR CHECK. RETURN THIS PORTION WITH YOUR PAYMENT.
**Contact Performant Recovery, Inc. at 1-800-963-0347**

(FAC ¶¶ 30,31). The "fees & costs" listed in the Collection Letter equals the maximum collection fee Defendants would receive if Plaintiff agreed to pay ALL outstanding principal and interest PLUS ALL collection fees as of the date of the Collection Letter. (FAC ¶ 31). The "current balance" in the table is the sum of the "fees & costs," the current principal , and the current interest (FAC ¶ 33). The "fees & costs" cell of the table included in the Collection Letter contains a barely visible asterisk, which appears to relate to the confusing statement on the back (discussed above) concerning the possibility of a change in the fees due. The Collection Letter also stated the following:

This notice is from Performant Recovery, Inc. (Performant). The U.S. Department of Education (ED), the current creditor and holder of your defaulted student loan or grant overpayment debt, has referred your account to Coast Professional, Inc. (Coast) for collection. Coast has authorized Performant, as a subcontractor, to act on their behalf to assist in the resolution of your account. ED has indicated your entire balance as indicated above is due and payable. As of the date of this letter, you owe the balance indicated above. Because of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater. We do recognize that many individuals may not

**C.  Posture of the Case**

Plaintiff filed her initial class action complaint in West Virginia state court on April 2, 2020,

against Performant Recovery, Inc., and Plaintiff filed her First Amended Complaint on November 24, 2020. (ECF No. 1, Ex. 2). Plaintiff's FAC added an additional Performant entity as well as Defendant Coast Professional, the entity hired by the ED, and which subcontracted Performant, to collect Plaintiff's student loan debt. Defendant removed this matter to this Court on January 8, 2021, under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (ECF No. 1). Plaintiff now timely responds to the motions to dismiss filed on February 5, 2021. (ECF Nos. 11,13).

## III.   ARGUMENT

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is designed to test only the sufficiency of the plaintiff's allegations" and "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *F.D.I.C. v. Baldini,* 983 F. Supp. 2d 772, 784 (S.D.W. Va. 2013) (Faber, D.).

## A.  Plaintiff has Complied with the WVCCPA Right to Cure Provision.

While acknowledging that Plaintiff fully complied with the WVCCPA's Right to Cure provision with respect to Performant Recovery, in that she sent such a notice to Performant Recovery before filing this action which met every requirement in the statute, both Performant Financial and Coast move for dismissal because Plaintiff did not send these related entities *additional* right to cure notices before joining them as Defendants when she amended her complaint. Defendants' contention is not a basis for dismissal.

Defendants' argument arises from the Right to Cure provision in the WVCCPA, which reads in pertinent part as follows:

> No action may be brought pursuant to this article . . .  until the consumer has informed the creditor or debt collector in writing and by certified mail, return receipt requested . . . . of the alleged violation and the factual basis for the violation and provide the creditor or debt collector forty-five days from receipt by the agent or at the principal place of business referenced above of the notice of violation ***but twenty days in the case a cause of action has already been filed*** to make a cure offer.

W.Va. Code § 46A-5-108(a) (emphasis added). Plaintiff has complied with this provision with respect

6

to all three Defendants.

First, Plaintiff has rectified any potential problem with respect to Performant Financial and Coast by sending both Defendants their own individual Right to Cure notices. *See* Exhibits A and B. Defendants have thus been informed, in the manner contemplated by statute, of their right to cure their violations of West Virginia law. Section 5-108 expressly allows for right to cure notices to be sent *after an action has already been filed* ("twenty days in the case a cause of action has been filed,") and the notices thus satisfy the Act. And notably, neither Defendant has offered to cure their violations in the twenty days since being notified of same.

Second, both Defendants have been on notice of the violations since the Amended Complaint was filed November 24, 2020, and constructively since the inception of the litigation because of their close relationships with Performant Recovery. The Performant Defendants are closely related. Performant Recovery is a wholly owned subsidiary of Performant Financial Corporation. (FAC ¶ 9). Tellingly, the entities are represented by the same counsel here. And Coast and Performant Recovery also represent themselves as closely intertwined; indeed, the letter Defendants sent to Plaintiff was sent by "Performant Recovery, Inc., C/O Coast Professional, Inc." and the letter is replete with representations of their intertwinedness. A primary purpose of the statutory notice provision – to provide notice – was therefore effected for all three Defendants by the initial Notice sent to Performant Recovery, as well as the Complaint and FAC filed, even before Plaintiff sent individual Right to Cure Notices to the later joined Defendants.

Third, while there is limited case law interpreting this relatively new provision of the WVCCPA, this Court has found that it is not jurisdictional, and that corollary provisions in other West Virginia statutes suggest that "dismissal is not always the appropriate remedy for deficiencies in the pre-suit notice". *Adkins v. Midland Credit Mgmt. Inc.*, No. 5:17-cv-04107, 2019 WL 1370872 (S.D. W. Va. Mar.

26, 2019) (denying motion to dismiss on basis of allegedly insufficient right to cure notice, citing *Hinchman v. Gillette*, 618 S.E.2d 387, 396 (W. Va. 2005). Here, where Plaintiff has now complied with the Right to Cure provision, dismissal would be a draconian remedy not warranted by the circumstances. At most, should the Court find that Plaintiff defaulted on the pre-suit notice requirement as to the later joined Defendants, leave to amend should be freely granted. *See Fanary v. Equifax Info. Servs.*, No. 5:20-cv-00169, 2020 WL 4906002 (S.D. W. Va. Aug. 20, 2020) (granting request for leave to amend when plaintiff inadvertently defaulted on WVCCPA right to cure requirement by sending notice to incorrect agent). For all these reasons, Defendants' argument for dismissal based on Plaintiff's compliance with West Virginia Code §46A-5-108 should be rejected.

**B.  The Higher Education Act Does Not Preempt Plaintiff's Claims.**

> **i.  Federal Preemption**

There are three situations in which preemption may be found under the Supremacy Clause:

> (1) when Congress has clearly expressed an intention to do so ("express preemption");
> (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"); and (3) when a state law conflicts with federal law ("conflict preemption").

*College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005).

The *College Loan Corp.* court further explained that in any preemption analysis, the "'starting presumption,' is that 'Congress does not intend to supplant state law.'" *Id.* at 597. The court also noted that "federal regulations that fail to occupy the field do not by their mere existence, preempt non-conflicting state law. *Id.* at 598. Courts in this state have reiterated this position when deciding whether the HEA preempts West Virginia's consumer protection laws. *See Smith v. Collection Technologies, Inc.*, Case No. 2:15-cv-6816, 2016 WL 1169529, at *7 (S.D.W. Va. Mar. 22, 2016) (analyzing HEA preemption of WVCCPA claims and noting that because "[c]onsumer protection is an area traditionally reserved by the States . . . [a] presumption against preemption therefore applies"); *McComas v. Fin. Coll.*

8

*Agencies*, No. 2:96-0431, 1997 WL 118417, at FN4 (S.D.W. Va. Mar. 7, 1997); (considering HEA preemption and noting that, "[t]here is, however, a presumption against finding preemption of state laws in areas traditionally regulated by the states."); *Adams,* 237 W. Va. at 312 (rejecting HEA preemption of WVCCPA claims, noting that, "our law has a general bias against preemption"). Defendants argue that Plaintiff's claims are preempted by the HEA due to both express preemption and conflict preemption. Each is addressed in turn below.

### ii.   Defendants' Preemption Argument

Defendants contend that the HEA strips consumers of their right to be protected from misleading debt collection practices under state law and that Congress somehow intended the HEA to shield student loan debt collectors from all liability under state law in the collection of defaulted student loans. Had Congress wanted to extend such expansive immunity to student debt collectors it could have; however, Congress did not; therefore, this Court should reject Defendants' attempt to circumvent the intent of the legislative branch by seeking to obtain such immunity through the judicial branch.

Defendants heavily cite cases[4] and regulations[5] involving student loan servicers, not always directly applicable to their role as private debt collectors. The primary basis for their preemption argument is that the WVCCPA's prohibition on misleading and deceptive debt collection is either expressly preempted by § 1091a(b)(1) of the HEA or that it conflicts with the purpose of the HEA. However, while the WVCCPA clearly prohibits fraud and misleading conduct, § 1091a(b)(1) of the HEA does not in any manner address communications with student loan borrowers but instead ensures that

---

[4] Both Defendants heavily cite the Ninth Circuit Court of Appeals decision in *Chae v. SLM Corp.* in support of their uniformity argument (Def. Performant Mot. at 10, 11, 12, 14); (Def. Coast Mot. at 8, 10, 12, 13). But *Chae* involved a direct conflict between state law which has not been shown here. 593 F.3d 936 (9th Cir. 2010).

[5] The Performant Defendants' briefly argue that § 1098g of the HEA (stating federal student loans "shall not be subject to any disclosure requirements of any State law") is preemptive because "Plaintiff's claims are, at best, grumbles as to the fashion in which loan information was disclosed." (Def. Performant Mot. at 13-14). This argument can be easily set aside since nothing in the WVCCPA provisions upon which Plaintiff's claims are based even remotely require disclosure of specific information.

state law does not prevent enforcement of obligations to repay student loan debt. [6]

### iii.   The HEA Does Not Expressly Preempt Plaintiff's Claims.

Defendant correctly states that language such as "notwithstanding state law" as seen in the HEA § 1091a(b) are typically express preemption provisions. Express preemption requires deciding "whether the 'notwithstanding any provision of State law' clause of the HEA" expressly preempts the WVCCPA claims raised by Plaintiff. *Smith v. Collection Technologies, Inc.,* 2016 WL 1169529, at *7. This analysis includes a determination as to "the scope of the statute's reach" and whether that scope encompasses the state laws at issue. *Id.*

### a.   Scope of WVCCPA § 46A-2-127(d), (f), (h):
*Prohibiting Misrepresentations and False Impressions Made During Debt Collection*

In defending their right to charge certain fees and costs on defaulted federal student loans, and insisting that such a right forms the basis for preemption, Defendants misconstrue the scope of Plaintiff's claims. The fees and costs Defendants may recover when enforcing repayment of a defaulted federal student loan are irrelevant to Plaintiff's claims. Plaintiff does not dispute that she may be charged "reasonable collection costs" in connection with a defaulted student loan or even that the calculations used by Defendants in assessing such costs is incorrect. The scope of Plaintiff's claims, as clearly laid out in her FAC, includes the manner in which Defendants present information in their debt collection communications. Specifically, Plaintiff's claims are focused solely on the misrepresentations Defendants made in the Collection Letter. (FAC ¶¶ 65-74). Even if she succeeds on all of her claims, this will not impact Defendants' ability to recover collection costs and the other charges it is authorized to recover by § 1091a(b)(1). The only change in Defendants' practices that could arise from Plaintiff's successful

---

[6] Notably, while Defendants vigorously argue that state claims against them must be preempted to preserve uniformity in student loan collection among the 50 states, they seem to acknowledge the inapplicability of this preemption argument on the back of their own Collection Letter, which contains nine different state law required disclosures for debt collectors, despite the HEA's express preemption of state laws requiring disclosures in § 1098g.

prosecution of her claims would be: (1) ending the unlawful practice of leading consumers to falsely believe that they owe a massive collection fee when in fact no such fee is due and (2) stopping Defendants' practice of falsely representing or giving a false impression that the ED calculated or approved of the amounts identified in collection letters as allegedly due and payable.

### b.  Congressional Intent/Scope of HEA § 1091a(b): Preempting State Laws Which Prevent Recovery of Student Loan Obligations.

The first step in determining the scope of the preemption clause in § 1091a(b) is to "identify the domain expressly preempted." *Medtronic,* 518 U.S. at 484. When read in context, it is clear that § 1091a is intended to preempt only those state laws which would interfere with the ED's ability to recover money from defaulted borrowers, such as state statutes of limitations or state infancy laws. *See Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 916 (11th Cir. 2020) (explaining that "[t]he HEA includes various provisions that explicitly preempt certain areas of state law, *See, e.g.,* 20 U.S.C. §§ 1078(d) (state usury laws); 1091a(a)(2) (statute statutes of limitations); 1091a(b)(2) (state law infancy defense)").

The language in § 1091a(b)(1) merely identifies the types of charges ED may recover from defaulted borrowers, specifically, the charges in the specified provisions as well as reasonable collection costs. Prefacing this language with "notwithstanding any provision of State law to the contrary" ensures preemption over any state law disallowing recovery of the specified charges and reasonable collection costs.

### c.  Prohibiting Misrepresentations and False Impressions in Debt Collection is Not within the Scope of Clearing State Law Hurdles to Enforcement of Obligations to Repay.

Nowhere within § 1091a is there mention of the only issue presented in this case: debt collectors' misrepresentations made to defaulted student loan borrowers in debt collection communications about the amount due and the ED's agreement with the amount listed as due. Discussing § 1091a, Coast claims that "several courts have characterized § 1091a as an 'express preemption provision." However, the "several courts" referred to includes three cases, which each analyzed an entirely different section of the

HEA (§ 1098g preempting state disclosure laws on student loans) and only mentioned § 1091a in passing as illustration of other HEA sections containing the "notwithstanding state law" language.[7]

In fact, Defendants cite no case in which § 1091a was raised preemptively, either successfully or unsuccessfully, and Plaintiff has found no such cases. This is because § 1091a is narrow in its scope of preventing state statutes of limitation and infancy laws which could interfere with the enforceability of federal student loans. In *Tipton v. Secretary of Educ. of U.S.,* a case in which the HEA was raised as a defense to WVCCPA claims, a court in this district recognized the narrow scope of § 1091a, noting that, "Perhaps most telling, in 1986, Congress acted to preempt only one type of state law defense, that of infancy, to the enforceability of [federal student] loans. *See* 20 U.S.C. § 1091a(b)(1)&(2)(1986)." 768 F. Supp. 540 (1991). In another case examining HEA preemption as a defense to the WVCCPA, the Supreme Court of Appeals of West Virginia reversed the lower court's preemption finding, holding that:

> There would appear to be nothing which would conflict with or frustrate the requirements and purposes of the HEA and FFELP by also precluding under State law, making a "false representation" about the "character, extent or amount" of a debt. While certain due diligence collection activities are required by the FFELP regulations, making "false representations" about the nature of a debt is certainly not one of them. We therefore find that the circuit court erred in concluding that this claim was federally preempted.

*Adams,* 237 W. Va. at 321. Similarly, in *McComas,* a court in this district considered the language in the HEA and the language in the WVCCPA and determined that, "[t]he HEA does not expressly preempt West Virginia law relating to debt collection." 1997 WL 118417, at *2 (finding that several provisions of the West Virginia Consumer Credit and Protection Act actually complement the HEA).

---

[7] Each case cited mentioned in passing that the HEA contains a handful of "express preemption provisions", including § 1091a's preemption over state laws on statutes of limitations or infancy that could prevent recovery of student loan obligations. *See Nelson v. Great Lakes Educ. Loan Servs., Inc.,* 928 F.3d 639, 650 (7th Cir. 2019) (holding no preemption under §1098g because student loan servicer's "statements, when untrue, cannot be treated by courts as mere failures to disclose information"); *Winebarger v. Penn. Higher Educ. Assistance Agency,* 411 F. Supp. 3d 1070, 1089 (finding preemption under §1098g because student loan servicer's "failure to provide accurate information is, in essence, nothing more than a disclosure claim"); *Chae v. SLM Corp.,* 593 F.3d 936, 943 (9th Cir. 2010) (finding that §1098g preempted claims against student loan servicer because "the state-law prohibition on misrepresenting a business practice 'is merely the converse' of a state-law requirement that alternate disclosures be made.").

### iv. The HEA Does Not Conflict Preempt Plaintiff's Claims.

Defendant next argues that Plaintiff's WVCCPA claims are "conflict preempted" by the HEA. There are two circumstances in which conflict preemption may occur: "direct conflict," which arises "from a direct conflict between state and federal law, such that compliance with both is impossible" and "obstacle preemption" where "a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *College Loan Corp.*, 396 F.3d at 596.

### a. No Direct Conflict:
*It is Possible to Comply with Both the HEA and the WVCCPA.*

It is widely accepted that, "[a] state law claim that does not seek to vary the requirements of federal law does not conflict with federal law." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). In this Case, the general misrepresentation claims made by Plaintiff under the WVCCPA do not conflict with any provision in the HEA, and certainly not with the § 1091a(b)(1) flagged by Defendant. As explained above, § 1091a(b) combats any state laws which interfere with the enforceability of repayment obligations, primarily focusing on state-specific statutes of limitation and state-specific infancy laws. The provision does not in any way touch upon the manner in which information is presented in debt collection communications made prior to acts seeking to enforce obligations to repay.

In *Cliff v. Payco General Am. Credits, Inc.*, the Eleventh Circuit Court of Appeals also rejected the student loan debt collector defendant's HEA preemption argument concerning a state law claim prohibiting misrepresentation of an illegitimate legal right during debt collection. 363 F.3d 1113, 1130 (11th Cir. 2004). The *Cliff* defendant argued preemption applied because certain provisions in the Florida consumer law would interfere with HEA regulations requiring it to engage in "a specific series of contacts . . . with a debtor in an attempt to collect a student loan." *Id.* The court found that while "other subsections of [the Florida Act] may hinder or restrict the completion of the required collection activity . . . an entire

state statute is not preempted because some of its provisions may actually conflict with federal laws." As a result, the court rejected the preemption argument based on its conclusion that defendant could comply with the HEA's regulations without making the prohibited misrepresentations. *Id.* at 1127.

A debt collector can certainly enforce an obligation to repay a federal student loan debt, including each type of fee and cost delineated in § 1091a(b)(1), without making misrepresentations and false implications in debt collection letters. In fact, the WVCCPA's prohibition on such actions works in tandem with the HEA's compliance goals as evidenced in its requirement that guaranty agreements "assure that due diligence will be exercised in the collection of loans insured under the program." 20 U.S.C. § 1078(c)(2). As explained by the *McComas* court, "there is no cross purpose in requiring due diligence in collection, while also requiring non-fraudulent, non-deceptive or nonmisleading representations of the putative collector." *McComas,* 1997 WL 118417, at *3.

### b. No Obstacle Preemption: The WVCCPA Does Not Interfere with Congressional Objectives.

Defendants also argue obstacle preemption, claiming that subjecting it to a state law provision prohibiting misrepresentations would be detrimental to the federal student lending system as a whole. (Defs. Mots. 11-14). As explained by the Fourth Circuit Court of Appeals, obstacle preemption exists where "a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *College Loan Corp. v. SLM Corp,* 396 F.3d at 596.

Notably missing from Defendants' Motions is reference to the purposes of the HEA as explained by the Fourth Circuit Court of Appeals in *College Loan Corp.,* which include: "encouraging states and non-profit organizations to make loans to students for post-secondary education, providing loans to those students who might not otherwise have access to funds, paying a portion of the interest accruing on student loans, and guaranteeing lenders against losses." *Id.* at 597 (citing 20 U.S.C § 1071(a)(1)(2000)); *accord Adams,* 237 W. Va. 312.

14

Considering whether the WVCCPA's prohibition on threatening and fraudulent debt collection stood as an obstacle to achieving the purposes of the HEA, a court in this district explained,

> **[P]rovisions barring threatening or fraudulent debt collection practices cannot be said to place a 'burden' on pre-litigation debt collection activities or to conflict with the objectives of the HEA**. . . .Though the WVCCPA does limit the activities of third parties collecting on student loans, the Court does not find that all such limits conflict with either the actual language of the HEA and accompanying regulations or with the purposes and objectives of the HEA.

*Snuffer v. Great Lakes Educational Loan Services, Inc.,* 97 F. Supp. 3d 827, 832 (S.D.W. Va. 2015) (internal citation omitted) (emphasis added).

Rather than focusing on the HEA's purposes as laid out by the Fourth Circuit, Defendants argue that application of the WVCCPA would create an obstacle to uniformity in the federal student lending system. They cite a 2018 ED Notice of Interpretation from the Secretary of Education expressing concern about "50 different State-level regulatory regimes" for student loan servicers. 83 FR 10619-01. But a full read of this Notice makes clear that it was issued specifically in response to attempts by several states to roll out new student loan servicing laws, including state-specific licensing requirements, state-specific deadline requirements during the servicing process, and state-specific disclosure requirements. None of which Defendants claim occurred here.

Further, this Court should not give deference to this Notice because as the court noted in *Student Loan Servicing All. v. District of Columbia,* "[t]he DOED Notice is a retroactive, ex-post rationalization for DOED's policy changes, and therefore does not merit *Skidmore* deference. It does not analyze in any real way the regulation it cites" and "it is "a stark, unexplained change in the DOED's position." 351 F. Supp. 3d 26, 50 (D. D.C. 2018). The court held that, "no deference is owed to an 'agency's conclusion that state law is preempted . . . " *Id.* The Fourth Circuit found, and has not reversed course, that "[w]e are unable to confirm that the creation of 'uniformity,' a goal relied on by the district court in its Preemption Ruling, was actually an important goal of the HEA." *College Loan Corp.,* 396. F.3d at 597.

**C.** **Defendants' Practices Violate the WVCCPA, an Analysis Requiring Factual Inquiry.**

**i.**   **Defendants Falsely Represented the Character and Amount of the Debt.**

The Collection Letter listed "fees & costs," which Defendants' Motions confirms would only be paid by ED as "a percentage of anything collected towards Plaintiff's Loan." Thus, here, where the Collection Letter dated July 12, 2019 indicates that the entire balance remained outstanding, the amount collected by Defendants would have been $0, making the fees & costs payable 0% of that $0. In other words, as of July 12, 2019, the "fees & costs" payable were $0 yet the letter listed them as $11,431.47. Defendants would only recover the $11,431.47 in collection fees if Plaintiff paid the total amount outstanding on the debt.

In a factually similar case involving FDCPA claims,[8] *Reizner v. Pioneer*, the District of New Jersey court found that, "[w]hen taking these allegations as true, which the Court must at this stage of the proceedings, and under the least sophisticated debtor standard, Plaintiff has sufficiently stated a FDCPA claim in order to survive dismissal based on the allegedly false or misleading inclusion of a contingent fee that had yet to be charged, incurred, or due. No. 18-16014, 2019 WL 1569824, at *3 (D. N.J. Apr. 11, 2019). The *Reizner* court noted the following:

> [T]he Court notes that its preliminary conclusion at the motion to dismiss stage appears to be further supported by the HEA's implementing regulations, where one such regulation in particular states that a borrower shall be charged "an amount equal to reasonable costs *incurred* by the agency in collecting a loan" and said costs may include "collection agency charges." 34 C.F.R. § 682.410(b)(2) (emphasis added).

*Reizner,* 2019 WL 1569824, at FN 2. In *Francis v Gen. Rev. Corp.,* the court held that including the not yet earned collection fee in the current amount due "renders the collection letter deceptive to the least sophisticated consumer, who 'could easily misinterpret the defendant's letter to mean that the plaintiff

---

[8] The federal Fair Debt Collection Practices Act is "nearly identical" to the WVCCPA's debt collection provision. *Fleet v. Webber Springs Owners Assoc., Inc.,* 772 S.E.2d 369, 379 (W. Va. 2015).

actually owed $1,680.04 in collection costs, when i[n] fact [she] did not." No. 18-cv-6955, 2020 WL 4586392, at *4 (E.D.N.Y. Aug. 10, 2020) (citing *Annunziato v. Collecto. Inc.,* 207 F. Supp. 3d 249, 261 (E.D.N.Y. 2016)).

Defendants claim that one statement, placed on the back of the Collection Letter, would clear up any confusion caused by the inclusion of the not yet earned contingency fee in "fees & costs" and as part of the "Current Balance." The sentence states, "[t]his collection agency fee is not due until the time of payment and the amount of the fee may decrease at the time of repayment depending on the amount that is ultimately paid."

The misleading and deceptive nature of the Collection Letter, however, is only compounded by this statement, which tells the consumer that the collection agency fee "**may** decrease at the time of payment depending on the amount that is ultimately paid" when in fact the amount WILL decrease (or increase) depending on the amount ultimately paid. (emphasis added). The statement leaves consumers in the dark as to whether a *larger* payment will decrease the collection agency fee or whether a *smaller* payment will decrease the collection agency fee. Defendants' Motions describe their compensation as involving a fixed percentage of the amount paid, such a borrower who negotiates a settlement lower than the total principle and interest listed in a collection letter will be charged a lower amount in collection fees. However, reading the sentence on the back of the Collection Letter could lead a **reasonable consumer to infer just the opposite:  that the more he or she is willing to pay towards principal and interest, the lower he or she will be charged in collection agency fees**. The possibility of this inference is amplified when read in conjunction with the following statement on the front page of the Collection Letter, "[b]ecause of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater."

The misrepresentations in the Collection Letter are also not negated by the inclusion of this attempted exculpatory language because the formatting and language choices of the letter overshadow and contradict the sentence. Specifically, the sentence is difficult to notice because it is written on the second page of the letter which, most recipients will not read because it contains only a form for noting personal information changes and state-specific disclosures. The sentence is further difficult to notice because the asterisk connecting it to the table on the first page is barely visible and the sentences itself is written in font smaller than the font used in the body text on the first page of the Collection Letter. Further, even if a consumer located this sentence, it would only seek to further confuse the consumer because it references a "collection agency fee" when there is no amount referred to by this name in the table or anywhere else in the Collection Letter. It is unlikely that consumers would realize that "the collection agency fee" mentioned on the back of the Collection Letter is the same charge referred to as "fees & costs" on the front page of the Collection Letter." The above-described presentation of fees & costs and collection agency fees in the Collection Letter provides no clarity to consumers as to the amount actually due or the amounts that may be due depending on the amount they actually pay and constitute false representations or implications of the character, extent, or amount of the claim against the consumer in violation of WVCCPA § 46A-2-127(d).

Defendants also falsely represented the content of the letter, including the "current balance" and "fees & costs) as having been calculated by, or at a minimum approved by, ED, in violation of the WVCCPA's prohibition on using written communication falsely represented to be authorized, issued or approved by . . . an official or any other legally constituted or authorized authority, or which creates a false impression about its source, authorization or approval." § 46A-2-127(f). (FAC ¶ 71-72). Defendant argues that this violation is not present because the Collection Letter explained that Defendants sent it on behalf of ED. But Defendants wholly ignore the statement in the letter which Plaintiff challenges, which

states, "ED has indicated your entire balance as indicated above is due and payable."

Another court in this district rejected the argument that the HEA preempted WVCCPA claims where during the debt collector's "agent deceptively represented on two occasions that she was affiliated with the government in violation of WVCCPA section 46A-2-127(d)." *McComas,* 1997 WL 118417, at *3 The *McComas* court held that "a debt collector can comply with the federally required sequence of contacts without employing a false government identity." *Id.* Similarly, in this case, Defendants can collect defaulted federal student loans without misrepresenting to consumers that ED calculated, or at a minimum approved, the amounts listed as "due and payable" in collection letters.

### ii.     Whether the Letter is Misleading or Deceptive is a Question of Fact.

While Plaintiff maintains that Defendants' Collection Letter does in fact violate the WVCCPA, such an analysis requires detailed factual inquiry not appropriate at the motion to dismiss stage. "The question of whether an unsophisticated consumer would find certain debt collection language misleading [is] a question of fact." *Soyinka v. Franklin Collection Service, Inc.,* 472 F. Supp. 3d 463, 466 (N.D. Ill. 2020) (citing *Lox v. CDA, Ltd.,* 689 F.3d 818, 822 (7th Cir. 2012); *McMillan v. Collection Professionals, Inc.,* 455 F.3d 754, 759 (7th Cir. 2006) (applying the same standard to questions of whether debt collection tactics were unfair and misleading)). The question of whether a letter is false, deceptive, misleading, unfair, or unconscionable, "is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan,* 455 F.3d at 759.

### D.  <u>Defendant Coast is Liable for the Acts of its Subcontractors.</u>

Defendant provides no legal basis in support of its request that it be dismissed as a Defendant from this lawsuit. The entirety of Defendant Coast's mentioning of this request in its Motion consists of one sentence, "Plaintiff's claims fail because Coast did not send the Letter, Performant did. Thus, Coast necessarily made no false representation to Plaintiff." Defendant completely overlooks any potential

agency liability or vicarious liability despite the fact that it admits in its Motion that "Coast subcontracted with Performant Recovery, Inc. ('Performant') who sent Plaintiff the complained of letter." The relationship between Coast and Performant is clearly set forth in the Collection Letter:

> This notice is from Performant Recovery, Inc. (Performant). The U.S. Department of Education (ED), the current creditor and holder of your defaulted student loan or grant overpayment debt, has referred your account to Coast Professional, Inc. (Coast) for collection. Coast has authorized Performant, as a subcontractor, to act on their behalf to assist in the resolution of your account. ED has indicated your entire balance as indicated above is due and payable. ~~As of the date of this letter, you owe the balance indicated above. Because of interest or other fees that may vary~~

The contractor/subcontractor relationship may make Coast vicariously liable for the acts of Performant acting as its agent. "It is always incumbent upon one who asserts vicarious liability to make a prima facie showing of the existence of the relation of ... principal and agent." *Sanders v. Georgia-Pac. Corp.*, 225 S.E.2d 218, 222 (W. Va. 1976). Here, by identifying the contractor/subcontractor language in the Collection Letter, Plaintiff has met this burden. Further, "once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact." *Id.; see also* Syl. Pt. 2, *Sipple v. Starr,* 520 S.E.2d 884 (1999) ("One who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination."). Because Defendant has failed to meet its burden (which it cannot meet until discovery takes place), a decision as to liability should not be made.[9]

## IV.   CONCLUSION

For the reasons described herein, Plaintiff respectfully requests that this Court deny Defendants' Rule 12(b)(6) motions to dismiss.

---

[9] The importance of accountability via vicarious liability is especially critical here where the activity in question stems from a government contract. In fact, federal law requires certain contractors to submit subcontracting plans explaining the manner in which it plans to subcontract out its duties. *See United States ex. rel. PCA Integrity Assocs, LLP v. NCO Fin. Sys., Inc.*, 2020 WL 686009 (D. D.C. Feb. 11, 2020).

Respectfully submitted,

Plaintiff,
By counsel.

s/ Jonathan R. Marshall
Jonathan R. Marshall (WVSB #10580)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 facsimile
jmarshall@baileyglasser.com

Patricia M. Kipnis (WVSB #12896)
BAILEY & GLASSER LLP
923 Haddonfield Road
Suite 300
Cherry Hill, New Jersey 08002
(856) 324-8219
pkipnis@baileyglasser.com

and

Steven R. Broadwater , Jr.
HAMILTON BURGESS YOUNG & POLLARD
P. O. Box 959
Fayetteville, WV 25840-0959
304/574-2727
Fax: 304/574-3709
Email: sbroadwater@hamiltonburgess.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

CARLA OAKLEY, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.                                   Case No. 1:21-cv-00021-DAF

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
and PERFORMANT RECOVERY, INC.,

      Defendants.

<u>**Certificate of Service**</u>

    I hereby certify that on this 5th day of March 2021, **PLAINTIFF'S OPPOSITION TO RULE 12(B)(6) MOTIONS FILED BY DEFENDANT COAST PROFESSIONAL AND THE PERFORMANT DEFENDANTS** was served on counsel of record through the CM/ECF system, which will notify the following CM/ECF participants:

Albert C. Dunn , Jr.
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: adunn@baileywyant.com

*Counsel for Defendant Coast Professional, Inc.*

Alex J. Zurbuch
Joseph M. Ward
FROST BROWN TODD
United Bank, Suite 1100
500 Virginia Street East
Charleston, WV 25301
Email: azurbuch@fbtlaw.com
jward@fbtlaw.com

*Counsel for Defendants Performant Recovery, Inc.*
*and Performant Financial Corp.*

<u>*s/ Jonathan R. Marshall*</u>
Jonathan R. Marshall (WVSB #10580)