IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CARLA OAKLEY,

     Plaintiff,

v.                                        CIVIL ACTION NO. 1:21-00021

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
and PERFORMANT RECOVERY, INC.

     Defendants.

## MEMORANDUM OPINION

On September 30, 2021, the court entered an order (1) granting without prejudice the motion to dismiss of defendant Performant Financial Corp. ("PFC") for lack of personal jurisdiction (ECF No. 9); (2) denying the motion to dismiss of defendants PFC and Performant Recovery, Inc. ("PRI") (ECF No. 11); and (3) denying the motion to dismiss of defendant Coast Professional, Inc. ("Coast") (ECF No. 13).  (ECF No. 52.)  In this Memorandum Opinion, the court sets forth its reasoning for granting PFC's motion to dismiss for lack of personal jurisdiction.

## I.   Background

This is a putative class action alleging deceptive debt collection practices by defendants in violation of West Virginia law.  Plaintiff says defendants violated the West Virginia

Consumer Credit and Protection Act ("WVCCPA") when they sent her

a letter regarding her defaulted student loan.  She says that

the letter was deceptive and misleading under the WVCCPA because

it represented that the collection agency's contingency fee was

due and owing as part of the "current balance" even though the

agency had not yet earned the contingency fee by collecting the

debt.  The contingency fee was listed under the category "Fees

and Costs" and was computed assuming that there would be a full

recovery of the principal and interest then due on the defaulted

loan.  There was a false implication, says plaintiff, that the

contingency fee (in the amount listed) was "unavoidable" and

"fixed."  (See, e.g., FAC ¶ 66.)

Plaintiff says that defendants compounded the deception by

using language in the body of the letter that attached the U.S.

Department of Education's imprimatur to the amount due, and

further, by attempting to qualify the "Fees & Costs" with an

asterisk and cryptic note (on the back of the letter) suggesting

that the amount listed may not be due presently after all, and

may change.  Plaintiff also points to language on the front page

of the letter stating that the amount ultimately due may be

greater than the current balance but failing to acknowledge that

the amount due may be less (because the contingency fee is

ultimately less).

Plaintiff has named three defendants in her First Amended
Complaint ("FAC"):  Coast, PFC, and PRI.  Coast allegedly
contracted with the Department of Education to collect the debt
and then subcontracted with PRI, which is a wholly owned
subsidiary of PFC.  PRI sent the collection letter at issue.
The letter states that PRI sent it while acting on behalf of
Coast.  Although PFC is not mentioned in the letter, plaintiff
alleges that PFC and PRI sent the letter jointly.  Moreover,
plaintiff alleges that PFC operates as a single business with a
single management team that reports to its CEO.

## II.  Legal Standard

The United States Court of Appeals for the Fourth Circuit
has described the general framework for resolving a threshold
personal jurisdiction challenge such as this one as follows:

> When personal jurisdiction is properly challenged
> under Rule 12(b)(2), the jurisdictional question is to
> be resolved by the judge, with the burden on the
> plaintiff ultimately to prove grounds for jurisdiction
> by a preponderance of the evidence.  When, however
> . . . a district court decides a pretrial personal
> jurisdiction motion without conducting an evidentiary
> hearing, the plaintiff need only make a prima facie
> showing of personal jurisdiction.  In deciding whether
> the plaintiff has made the requisite showing, the
> court must take all disputed facts and reasonable
> inferences in favor of the plaintiff.

Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334
F.3d 390, 396 (4th Cir. 2003) (citations omitted).

3

Federal courts must analyze whether the assertion of personal jurisdiction comports not only with the law of the forum state (the state's long-arm statute), but also with due process.  Id. at 396.  These two inquiries naturally merge into one when the forum state's law provides for the exercise of personal jurisdiction to the outermost limits of due process. Id. at 396-97.

Whether the two inquiries merge in West Virginia is unclear.  A district court is bound to apply the forum state's long-arm statute as interpreted by its high court (although federal interpretations remain persuasive authority).  Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61, 61 n.5 (4th Cir. 1993).  Despite statements in opinions of federal courts that West Virginia's long-arm statute is coextensive with the boundaries of due process, see, e.g., In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997), the Supreme Court of Appeals of West Virginia describes its personal jurisdiction analysis as a "two-part inquiry."  State ex rel. Third-Party Defendant Health Plans v. Nines, 244 W. Va. 184, 852 S.E.2d 251, 259 (2020) (Armstead, C.J.); see also Syl. pt. 3, State ex rel. Ford Motor Co. v. McGraw, 237 W. Va. 573, 788 S.E.2d 319, 323 (2016) ("A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident.").

The consistent assertion by the state's high court that
there are two steps in the personal jurisdiction analysis
suggests that West Virginia's long-arm statute, W. Va. Code,
§ 56-3-33, is possibly not coextensive with the limits of due
process after all.  Moreover, the parties have pointed the court
to no opinion by the state supreme court that collapses the
inquiry into a single step.  The parties' briefs do not cite
West Virginia's long-arm statute.  However, because the court
determines that the allegations are insufficient under due
process, the court need not reach the state law issue at this
time.

## III. Discussion

The allegations here do not establish a prima facie case
for personal jurisdiction over PFC.  While plaintiff contends
that every allegation against PRI is an allegation against PFC,
the reason that plaintiff can reasonably duplicate the
allegations is her view that the two entities are really one and
the same.  Thus, plaintiff's case for personal jurisdiction
against PFC rises or falls based on the alter ego theory of
personal jurisdiction.[1]  While plaintiff's opposition memorandum
catalogues facts in support of the alter ego theory, the only
allegation in the FAC in support of the alter ego theory is that

---

[1] This is so for the additional reason that PRI does not contest
whether it is subject to this court's jurisdiction.

PFC operates as a single entity.  This is too threadbare.  But because amendment does not appear futile, the court will grant leave to amend.

Due process requires "'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'"  Carefirst, 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A party may establish personal jurisdiction over a parent corporation that does not otherwise have sufficient minimum contacts when (1) there is personal jurisdiction over the parent's subsidiary; and (2) the subsidiary is the parent's alter ego.  See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433-34 (4th Cir. 2011).  This court looks to West Virginia law to determine whether PRI is the alter ego of PFC.  See Id. at 434 (applying forum state law in reviewing finding of personal jurisdiction under alter ego theory); see also Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) ("In applying the alter-ego theory of personal jurisdiction in this diversity action, we must look to Ohio law.").

To ask whether there exists an alter ego relationship between a parent corporation and its subsidiary is to ask whether it is appropriate to pierce the corporate veil between

them.  See Virtual City, 650 F.3d at 434 (looking to Virginia

law of piercing the veil on question of alter ego jurisdiction

theory).  It is natural that these questions are the same

because the doctrine of piercing the corporate veil is one of

the "alter ego doctrines."  See S. Elec. Supply Co. v. Raleigh

Cty. Nat. Bank., 320 S.E.2d 515, 521-22 (W. Va. 1984).

Accordingly, the basic inquiry here is whether the allegations

are sufficient to show that the corporate veil between PFC and

PRI should be pierced under West Virginia law.

     "The law presumes that two separately incorporated

businesses are separate entities and that corporations are

separate from their shareholders."  Id. at 516.  While the

separation between a corporation and its owners is a legal

fiction, that fiction is a formidable one, and the party seeking

to pierce the corporate veil carries a "heavy burden."  See

Tucker v. Thomas, 853 F. Supp. 2d 576, 590 (N.D.W. Va. 2012).

"The doctrine is complicated, and it is applied gingerly."  S.

Elec., 320 S.E.2d at 522.  As the court explained in Southern

States Co-op., Inc. v. Dailey:

     [T]he corporate form will never be disregarded
     lightly.  The mere showing that one corporation is
     owned by another or that they share common officers is
     not a sufficient justification for a court to
     disregard their separate corporate structure.  Nor is
     mutuality of interest, without the countermingling of
     funds or property interests, or prejudice to
     creditors, sufficient.  Rather it must be shown that

7

the corporation is so organized and controlled as to
be a mere adjunct or instrumentality of the other.

280 S.E.2d 821, 827 (W. Va. 1981).  Later West Virginia opinions

have set forth a two-part test for disregarding the corporate

form:  (1) a unity of interest to such an extent that the

corporation and its shareholders have lost their "separate

personalities" and (2) an inequitable result but for the

disregard of the corporate form.  See syl. pt. 6, Kubican v. The

Tavern, LLC, 752 S.E.2d 299, 301 (W. Va. 2013) (quoting syl. pt.

3, in part, Laya v. Erin Homes, Inc., 352 S.E.2d 93 (W. Va.

1986)).

The application of this test "requires a fact-driven

analysis that is specific to each case."  Dailey v. Ayers Land

Dev., LLC, 825 S.E.2d 351, 360 (W. Va. 2019).  In making this

"case-by-case" determination, "some of the relevant factors" are

the following:

(1) commingling of funds and other assets of the
corporation with those of the individual shareholders;

(2) diversion of the corporation's funds or assets to
noncorporate uses (to the personal uses of the
corporation's shareholders);

(3) failure to maintain the corporate formalities
necessary for the issuance of or subscription to the
corporation's stock, such as formal approval of the
stock issue by the board of directors;

(4) an individual shareholder representing to persons
outside the corporation that he or she is personally
liable for the debts or other obligations of the
corporation;

(5) failure to maintain corporate minutes or adequate corporate records;

(6) identical equitable ownership in two entities;

(7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);

(8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;

(9) absence of separately held corporate assets;

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or

9

entity to the detriment of creditors, or the
manipulation of assets and liabilities between
entities to concentrate the assets in one and the
liabilities in another;

(18) contracting by the corporation with another
person with the intent to avoid the risk of
nonperformance by use of the corporate entity; or the
use of a corporation as a subterfuge for illegal
transactions;

(19) the formation and use of the corporation to
assume the existing liabilities of another person or
entity.

Dailey v. Ayers Land Dev., LLC, 825 S.E.2d 351, 360 (W. Va.

2019).

The court must pause here and note that, when the issue is

jurisdictional veil piercing (as opposed to substantive veil

piercing), a different, smaller set of factors may inform the

analysis.  In Norfolk S. Ry. Co. v. Maynard, the court appeared

to adopt a set of eleven factors that had been used in the

District of Minnesota:

(1) Whether the parent corporation owns all or most of
the capital stock of the subsidiary;

(2) Whether the parent and subsidiary corporations
have common directors and officers;

(3) Whether the parent corporation finances the
subsidiary;

(4) Whether the parent corporation subscribes to all
the capital stock of the subsidiary or otherwise
causes its incorporation;

(5) Whether the subsidiary has grossly inadequate
capital;

10

(6) Whether the parent corporation pays the salaries
and other expenses or losses of the subsidiary;

(7) Whether the subsidiary has substantially no
business except with the parent corporation or no
assets except those conveyed to it by the parent
corporation;

(8) Whether in the papers of the parent corporation or
in the statement of its officers, the subsidiary is
described as a department or division of the parent
corporation, or its business or financial
responsibility is referred to as the parent
corporation's own;

(9) Whether the parent corporation uses the property
of the subsidiary as its own;

(10) Whether the directors or executives of the
subsidiary do not act independently in the interest of
the subsidiary but take their orders from the parent
corporation in the latter's interest; and

(11) Whether the formal legal requirements of the
subsidiary are not observed.

437 S.E.2d 277, 282 (W. Va. 1993).

Norfolk Southern was decided several years after the debut

of the nineteen factors previously mentioned.  See Laya, 352

S.E.2d at 99.  Thus, the court appears to have made a conscious

choice to treat jurisdictional veil piercing differently.  Such

a choice would be consistent with persuasive federal authority

suggesting that when the question is whether to pierce the veil

for jurisdictional purposes only, courts should temper the

typically quite exacting test to pierce the veil for substantive

liability.  See Essar Steel Algoma Inc. v. Nevada Holdings, No.

17MISC360ATRWL, 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020)

11

(describing test as "less stringent"); <u>Transfirst Grp., Inc. v.</u>

<u>Magliarditi</u>, No. 3:16-CV-1918-L, 2017 WL 528776, at *7 (N.D.

Tex. Feb. 9, 2017) (same).  The court will assume that the

<u>Norfolk Southern</u> factors guide the analysis here.  Moreover, the

court is mindful that although plaintiff still bears a

substantial burden to show that the veil should be pierced for

jurisdictional purposes,[2] the full weight of the burden of

showing substantive alter ego liability does not rest on

plaintiff at this juncture.

     Plaintiff's opposition brief begins with this epigraph:

"Defendant Performant Financial Corp. manages and operates its

company as one business, with a single management team that

reports to the Chief Executive Officer."  (ECF No. 21, at 1.)

Plaintiff goes on to note that "there is information suggesting

the two entities are not separate and distinct," and she sets

forth this information as she marches through the <u>Norfolk</u>

<u>Southern</u> factors.  (<u>Id.</u> at 5-9.)  But the epigraph features the

only fact that plaintiff actually pleaded in support of

jurisdictional veil piercing.  PFC seizes upon this reality and

contends that the allegations of the FAC are, first and

---

[2] "Ordinarily, courts respect the legal independence of a
corporation and its subsidiary when determining if a court's
jurisdiction over the offspring begets jurisdiction over the
parent."  <u>United Elec., Radio & Mach. Workers of Am. v. 163</u>
<u>Pleasant St. Corp.</u>, 960 F.2d 1080, 1091 (1st Cir. 1992).

foremost, what count here, and that they are insufficient to
make a prima facie case for alter ego personal jurisdiction.

The court agrees with PFC.  Standing alone, the epigraph's
allegation is insufficient.  It is also somewhat conclusory.
The court cannot assert personal jurisdiction without more.  See
Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Phillips &
Stevenson, Fed. Civ. Proc. before Trial (Nat Ed.) Ch. 3-E (2021)
("Courts are increasingly unwilling to accept conclusory
allegations of alter ego liability.  Therefore, if you are
basing personal jurisdiction on an alter ego theory, be sure to
plead particular facts demonstrating its application . . . .").
Plaintiff offers more in her opposition brief.  That does not
resolve the pleading deficiency.  It does, however, suggest that
plaintiff may be able amend the operative complaint to bridge
the gap and make a prima facie case for alter ego personal
jurisdiction.[3]

**IV.   Conclusion**

For the reasons stated above, the court granted PFC's
motion to dismiss (ECF No. 9) with leave to amend.  (ECF No.
52.)  Plaintiff has fourteen days to amend, should she choose to

---

[3] Until plaintiff amends her FAC to incorporate the facts
asserted in her opposition brief, the court will not decide
whether those facts constitute a prima facie case for
jurisdiction.

13

do so.  Finally, the court clarifies that discovery remains

stayed as to PFC but is no longer stayed as to Coast and PRI.

The Clerk is directed to send a copy of this Memorandum

Opinion to counsel of record.

**IT IS SO ORDERED** this 14th day of October, 2021.

ENTER:

David A. Faber
Senior United States District Judge