**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

CARLA OAKLEY, on behalf of herself and
all others similarly situated,                                    PLAINTIFF

v.                                                                      CIVIL ACTION No. 1:21-00021

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
PERFORMANT RECOVERY, INC.,                          DEFENDANTS

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

COMES NOW, the Plaintiff, Carla Oakley, by counsel, individually and on behalf of all

others similarly situated, and states as follows:

<u>**NATURE OF THE CASE**</u>

1.      This action arises as a result of the Defendants' unlawful use of deceptive and

misleading representations and means in communications sent to Plaintiff and class members in

attempts to collect student loan debt.

<u>**JURISDICTION AND VENUE**</u>

2.      Plaintiff filed her complaint on April 2, 2020, in the Circuit Court of Mercer

County, West Virginia and filed an amended complaint in that court on November 4, 2020.

3.      On January 8, 2021, Defendant Coast Professional, Inc. filed a Notice of Removal

asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

<u>**PARTIES**</u>

<u>***Plaintiff***</u>

4.      The Plaintiff, Carla Oakley, is a resident of Mercer County, West Virginia. At all

times relevant during the debt collection, she was also a resident of West Virginia.

5.      At some time prior to 2019, Plaintiff incurred student loan debt which she defaulted upon.

*Defendants[1]*

6.      Defendant Coast Professional, Inc. (referred to herein as "Coast") either itself or through its agent subcontractors, provides collection services to third-party clients, including collecting on federal student loans for the United States Department of Education (at times referred to as "ED" or "FSA," an acronym for "Federal Student Aid").

7.      Defendant Coast is organized under the laws of the state of Nevada and maintains a principal place of business in New York.

8.      Defendant Performant Recovery is the alter ego of Defendant Performant Financial Corporation for the reasons stated herein.

9.      Defendant Performant Financial ("Performant Financial Corporation") is incorporated in the state of Delaware.

10.      Defendant Performant Financial Corporation derives revenues from providing technology-enabled audit, recovery, outsource customer service, and related analytics to clients in order to reduce losses from defaulted student loans, improper healthcare payments, delinquent state and federal receivables, and other receivables.

11.      Defendant Performant Recovery, Inc.[2] is a wholly owned subsidiary of Performant Financial Corporation.

---

1 Plaintiff alleges her claims against all Defendants jointly. To the extent necessary, Plaintiff intends to determine the individual decisions and acts of each Defendant in discovery.
2 Except where referred to by full name, Performant Financial Corporation and Performant Recovery, Inc. are collectively referred to herein as "Performant."

12.     Note 1 to the Consolidated Financial Statements in Defendant Performant Financial Corporation's annual report for the year ending December 31, 2018, states the following for the years ended December 31, 2018; 2017; and 2016:

> The Company's consolidated financial statements include the operations of Performant Financial Corporation (Performant), its wholly-owned subsidiaries Premiere Credit of North America, LLC (Premiere) and Performant Business Services, Inc., and its wholly-owned subsidiaries Performant Recovery, Inc. (Recovery), Performant Technologies, Inc., and Performant Europe Ltd. Effective August 13, 2012, we changed the name of our wholly-owned subsidiary from DCS Business Services, Inc. (DCSBS) to Performant Business Services, Inc., and DCSBS' wholly-owned subsidiaries from Diversified Collection Services, Inc. (DCS), and Vista Financial, Inc. (VFI), to Performant Recovery, Inc., and Performant Technologies, Inc., respectively. Performant is a Delaware corporation headquartered in California and was formed in 2003. Premiere is an Indiana limited liability company acquired by Performant on August 31, 2018. Performant Business Services, Inc. is a Nevada corporation founded in 1997. Recovery is a California corporation founded in 1976. Performant Technologies, Inc. is a California corporation that was formed in 2004.

> The Company is managed and operated as one business, with a single management team that reports to the Chief Executive Officer.

Performant Financial Corp., Annual Report (Form 10-K at F-10) (March 14, 2018) (available at https://www.sec.gov/Archives/edgar/data/0001550695/000155069519000022/a10k12312018.htm) (last accessed Oct. 27, 2021).

13.     Note 1 to the Consolidated Financial Statements in Defendant Performant Financial Corporation's annual report for the year ending December 31, 2020, states the following for the years ended December 31, 2020 and 2019:

> The Company's consolidated financial statements include the operations of Performant Financial Corporation (Performant), its wholly-owned subsidiaries Premiere Credit of North America, LLC (Premiere) and Performant Business Services, Inc. (PBS), and PBS's wholly-owned subsidiaries Performant Recovery, Inc. (Recovery), Performant Technologies, LLC (PTL), and Performant Europe Ltd (through 2018). Performant is a Delaware corporation headquartered in California and was formed in 2003. Premiere is an Indiana limited liability company acquired by Performant on August 31, 2018. PBS is a Nevada corporation founded in 1997. Recovery is a California corporation founded in 1976. PTL is a California limited liability company that was formed in 2004.

> The Company is managed and operated as one business, with a single management team that reports to the Chief Executive Officer.

Performant Financial Corp., Annual Report (Form 10-K at F-8) (March 22, 2021) (available at https://www.sec.gov/edgar/browse/?CIK=1550695&owner=exclude) (last accessed Oct. 27, 2021).

14.    Defendant Performant Financial Corporation's consolidated financial statements contain the operations of Performant Recovery, Inc.

15.    Defendant Performant Financial Corporation and its wholly owned subsidiaries are managed and operated as one business, with a single management team that reports to the Chief Executive Officer.

16.    Performant Financial Corporation's Board of Directors oversee the activities of Defendant Performant Financial Corporation and all of its subsidiaries, including Defendant Performant Recovery.

17.    Consumer complaints, whether made directly to Defendant Performant Financial Corporation, Defendant Performant Recovery, or a third-party are reported, summarized, or referred to in reports to or meetings with Defendant Performant Financial Corporation's Board of Directors and/or Audit Committee.

18.    Defendant Performant Financial Corporation is the entity registered with the Consumer Financial Protection Bureau to respond to consumer complaints about Performant Recovery.

19.    On March 19, 2012, Defendant Performant Financial Corporation's wholly owned subsidiary, DCS Business Services, Inc., entered into a Credit Agreement with Madison Capital Funding LLC ("2012 Credit Agreement").

20.    Defendant Performant Financial Corporation categorized the 2012 Credit Agreement as Performant Financial Corporation's "Long-term Debt" in its filing with the Securities and Exchange Commission during the pendency of the Credit Agreement.

21.    Defendant Performant Financial Corporation was bound by the negative covenants of the 2012 Credit Agreement.

22.    On April 12, 2012, Defendant Performant Financial Corporation filed to register the trademark "Performant Recovery" with the United States Patent and Trademark Office.

23.    Prior to November 12, 2012, DCS Business Services, Inc. changed its name to Performant Business Services, Inc., also a wholly-owned subsidiary of Defendant Performant Financial Corporation.

24.    On or near January 20, 2015, Defendant Performant Financial Corporation recorded an assignment of its entire interest in the "Performant Recovery" trademark (Performant Recovery Mark") to Defendant Performant Recovery with the United States Patent and trademark Office.  (https://assignments.uspto.gov/assignments/q?db=tm&sno=86287717   ) (last accessed Oct. 27, 2021).

25.    Upon information and belief, Performant Financial Corporation did not require payment from Defendant Performant Recovery for the assignment of the Performant Recovery mark.

26.    On or near February 12, 2015, Performant Financial Corporation filed a correction with the United States Patent and Trademark Office regarding its assignment of the Performant Recovery mark to Defendant Performant Recovery. (https://assignments.uspto.gov/assignments/q?db=tm&sno=86287717   ) (last accessed Oct. 27, 2021).

27.    On or near April 15, 2015, Defendant Performant Recovery conveyed a security interest in the trademark "Performant Recovery" to Madison Capital Funding, LLC.

(https://assignments.uspto.gov/assignments/q?db=tm&sno=86287717 ) (last accessed Oct. 27, 2021).

28.     Defendant Performant Recovery's conveyance of the Performant Recovery mark to Madison Capital Funding, LLC was required because certain conditions described in the 2012 Credit Agreement had come to pass.

29.     Upon information and belief, Performant Business did not pay Defendant Performant Recovery for the conveyance of its interest in the Performant Recovery mark to Madison Capital Funding, LLC.

30.     Defendant Performant Financial Corporation's consolidated financial statements include the operations of Defendant Portfolio Recovery, Inc.

31.     Defendant, Performant Recovery, Inc. conducts business in this County and State and maintains a principal place of business in Lathrop, California.

32.     The California Secretary of State lists Defendant Performant Recovery's address as 333 N Canyons PKWY STE 100 Livermore, CA 94551.

33.     The California Secretary of State's website lists Defendant Performant Financial Corporation's "Entity Address" and "Mailing Address" as 333 North Canyons Parkway, Suite 100 Livermore CA 94551.

34.     Lisa Im is the Chief Executive Officer for Defendant Performant Financial Corporation.

35.     Lisa Im is the Chief Executive Officer of Defendant Performant Recovery, Inc.

36.     Ian Johnston is the Vice President and Chief Accounting Officer for Defendant Performant Financial Corporation.

37.     Ian Johnston is the Chief Financial Officer of Defendant Performant Recovery, Inc.

38.    Performant Financial Corporation cannot legally be separated from the actions of Performant Recovery and vice versa because of the overlap in their finances, assets, goals, duties, personnel, governance, property, and location.

## BACKGROUND

### *The Student Loan Collection Industry*

39.    An estimated $140 billion in federal student loans were in default as of September 2018 according to the Department of Education.

40.    To manage this massive student loan portfolio, the Department of Education, through a government bidding process, hires private collection agencies ("PCAs") to carry out collection activity.

41.    The Department of Education compensates PCAs by paying a fixed commission on payments made by borrowers or by resolving the default debts using other available methods such as loan compromise/settlement, loan rehabilitation, loan consolidation, repayment plans, litigation, and discharge, among others.

42.    A description of the procedures and policies for the PCAs' collections of student loans under its contract with the Department of Education are set forth in the PCA Procedures Manual for Private Collection Agencies contracted by Federal Student Aid (hereinafter referred to as "PCA Manual").[3]

43.    The PCA Manual contains the following information relevant to this matter:

a.    The order issued to PCAs upon student loan account placement include only the outstanding principal and interest of the debt.

---

[3] The information herein was excerpted from the May 2019 version of the PCA Manual which can be viewed at the following web address: https://www.governmentattic.org/33docs/EDpcaManual_2016.pdf

b.  "Compromise" is when a PCA negotiates an approved payment amount with the borrower that satisfies a large portion of the balance owed. A Compromise may be deemed standard, discretionary, or non-standard.

c.  The PCAs must document all collection activities, including written correspondence received and delivered, on either the PCA's system or on the Department of Education's Debt Management Collection System.

d.  The PCA Manual's Standard of Conduct states that PCAs may not make false or misleading representations or provide incomplete or inaccurate information about program requirements or collection agency practices. As an example of prohibited incomplete or inaccurate information is listed as "**DON'T tell a borrower FSA requires something when it is actually the PCA's practice.**" (emphasis added).

e.  PCAs must report any allegations that they failed to adhere to the standards of conduct in the manual, engaged in prohibited activities, or violation debt collection laws.

f.  Without Department of Education approval, a PCA may offer a borrower a compromise beyond the set FSA standards. If the borrower accepts the offer, the PCA is responsible for the netback difference between the nonstandard compromise and the applicable compromise standard set by FSA. This is accomplished by FSA reducing the PCA's commissions by basing the commission on the netback dollars to FSA.

### *Defendants' Work in the Student Loan Collections Industry*

44.    Defendant Coast Professional, Inc. ("Coast"), either itself or through its agent subcontractors, provides collection services to third-party clients, including collecting on federal student loans for the United States Department of Education (in the student loan industry and herein commonly referred to as "ED").

45.    In 2009, ED selected Coast, along with 21 other entities, to serve as a Private Collection Agency ("PCA") with respect to federal student loans.

46.    For its collection work, the Department of Education compensates Coast on a commission basis, with Coast earning a fixed commission on payments made by borrowers or by resolving the defaulted debt using other methods.

47.     If Coast and a student loan borrower negotiated settlement of a $50,000 student loan for $30,000, the Department of Education would pay Coast a percentage of the $30,000. Whereas, if Coast and a student loan borrower negotiated settlement of the same $50,000 loan for $20,000, the Department of Education would pay Coast a percentage of the $20,000.

48.     In 2015, the Department of Education conducted undisclosed audits of the 22 PCAs which collected federal student loans to ensure compliance with contracts with the Department of Education, including "assurance that the agencies would not engage in unfair or deceptive practices and would comply with all applicable Federal and State laws." On February 27, 2015, the Department of Education announced that through its audits it found "incidences of materially inaccurate representations." (*See* announcement at https://www.ed.gov/news/press-releases/us-department-education-end-contracts-several-private-collection-agencies).

49.     In its February 27, 2015, announcement, the Department of Education also stated that "[f]ollowing a review of 22 private collection agencies, the U.S. Department of Education announced today that it will wind down contracts with five private collection agencies that were providing inaccurate information to borrowers . . . [t]he five companies are: Coast Professional, Enterprise Recovery Systems, National Recoveries, Pioneer Credit Recovery, and West Asset Management." (*See* ED announcement at https://www.ed.gov/news/press-releases/us-department-education-end-contracts-several-private-collection-agencies).

50.    Coast sued the government challenging the Department of Education's decision to wind down its contract with Coast. During the pendency of that litigation, citing "corrective action," the Department of Education assigned loans to Coast for collection.

### Individual Allegations

51.    Defendant Coast was hired to collect a consolidated federal student loan purportedly owed by Plaintiff ("Direct Loan").

52.    Defendant Coast subcontracted collection activity of the Direct Loan to Performant.

53.    As Coast was compensated primarily on a commission basis by the Department, Coast similarly compensated its subcontractors on primarily a commission basis.

54.    Thus, Coast and Performant's earnings were heavily dependent on the amounts paid by student loan borrowers.

55.    Performant was bound by the policies and procedures in the PCA manual as well as the terms of its agreement with Coast.

56.    Per its agreement with Coast, Performant sent written communication to Plaintiff in an attempt to collect payment on the Direct Loan.

57.    A collection letter sent by Performant to Plaintiff dated July 12, 2019 ("Collection Letter," attached hereto as Exhibit A), contained a table substantially similar to the table below:

58.    The "fees & costs" listed in the Collection Letter equals the fees and costs the Department of Education would pay Defendants if Plaintiff paid all outstanding principal and interest as of the date of the Collection Letter.

| ACCOUNT NO. | | PRINCIPAL BAL | INTEREST |
|---|---|---|---|
| xxxxxx5546 | | $51,003.10 | $12,758.20 |
| PENALTY CHARGES | | *FEES & COSTS | CURRENT BALANCE |
| $0.00 | | $11,431.47 | $75,223.17 |
| DO NOT SEND CASH MAKE CHECKS PAYABLE TO: | | AMOUNT PAID | |

U.S. DEPARTMENT OF EDUCATION. USE ACCOUNT NUMBER LISTED ABOVE ON YOUR CHECK. RETURN THIS PORTION WITH YOUR PAYMENT.
**Contact Performant Recovery, Inc. at 1-800-963-0347**

59.    Listing in the Collection Letter the maximum fees and costs Plaintiff could be charged as of the date of the letter falsely implied that the fees and costs were a pre-determined fixed expense that the creditor had already paid, or would definitely pay in the future, and which Plaintiff would be obligated to pay in full to resolve her debt.

60.    As reflected in the paragraph above, the "current balance" referenced in the Collection Letter was calculated by adding the actual current principal amount, the actual current interest amount, and the maximum amount of fees and costs Plaintiff could possibly have to pay as of the date of the Collection Letter if she paid off all of the principal and interest referenced therein.

61.    The automatic inclusion of the then-current maximum collection costs Plaintiff could be charged in the "current balance" cell of the Collection Letter falsely implied that the amount of fees and costs listed in the letter was a predetermined fixed expense that the creditor had already paid, or would definitely pay in the future, and which Plaintiff would be obligated to pay in full to resolve her debt.

*Page 11*

62.     The misleading and deceptive nature of the amount allegedly "due and payable" "as of the date of this letter" was compounded by the sentence in the Collection Letter stating that the amount ultimately paid "may be greater" but did not state the converse possibility that the amount ultimately paid may be less.

63.     For example, if Plaintiff paid the full amount of principal and interest listed in the Collection Letter then the "fees and costs" charged would be $11,431.47; however, if she negotiated total resolution of the debt for $50,000, the amount charged in "fees and costs" would be less than $11,431.47.

64.     The collection letter sent to Plaintiff stated,

The U.S. Department of Education (ED) the current creditor and holder of your defaulted student loan or grant overpayment debt, has referred your account to Coast Professional, Inc. (Coast) for collection. Coast has authorized Performant, as a subcontractor, to act on their behalf to assist in the resolution of your account. ED has indicated your entire balance as indicated above is due and payable. As of the date of this letter, you owe the balance indicated above. Because of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater.

65.     The statements above falsely represent or imply that the Department of Education calculated, or at a minimum, approved of the amount allegedly currently due when in fact the amount was calculated solely by Defendants because – as explained in the PCA Manual referenced in Paragraph 42 above, the Department of Education's orders to Coast at the time the loan was assigned included only principal and interest and *specifically excluded* collection costs and fees.

66.     Falsely implying that the Department of Education agreed that the "current balance" reflected in the Collection Letter was immediately due and payable added unwarranted credibility and enforceability to the statement and could intimidate

borrowers into making larger payments than they otherwise would and/or that they could afford to make.

67.    Specifically stating that the amount eventually paid may be greater, but not also stating that the amount could be less, falsely represented or implied that the amount eventually paid by Plaintiff would never be less than the balance reflected in the Collection Letter.

68.    Defendants are liable for the acts of their employees, agents, representatives, coconspirators, affiliates, and related entities under the theories of respondent superior, agency, conspiracy, joint venture, joint enterprise, as parents-subsidiaries or under corporate veil piercing. Accordingly, Defendants are equally, co-extensively, and jointly and severally liable for each and every act of its employees, agents, representatives, co-conspirators and related entities. Where reference is made herein to any Defendant and its employees, agents, representatives, co-conspirators or related entities, the Plaintiff intends that any such act, conduct or reference is attributable to the Defendant through these theories of vicarious liability.

69.    As a result of Defendants' conduct, Plaintiff was forced to retain counsel thereby incurring attorney fees and costs.

## **CLASS ALLEGATIONS**

70.    Ms. Oakley brings this action individually and, on behalf of all others similarly situated, under Rule 23 of the *West Virginia Rules of Civil Procedure.*

71.    The class of consumers represented by Ms. Oakley in this action is defined as:

All persons with a West Virginia address to whom Defendants sent collection letters within four years of the filing of this claim, which listed as due and payable a "current balance" which included the maximum fees and costs possible as of the

letter date and/or which indicated that the Department of Education determined or agreed that the aforementioned "current balance" was currently due.

72.    The class can be readily identified by collection activity logs, claim records and computer storage devices or databases, maintained by Defendants and/or their employees, representatives or agents, particularly in light of the records Defendants are required to keep as PCAs for the Department.

73.    Defendants uses letter templates when collecting on defaulted federal student loans whereby the text of the letter is pre-determined and the letters are customized for each recipient by the insertion of the recipient's individual details

74.    At some point during the four years preceding this lawsuit, Defendants used one or more letter template(s) which contained references to "current balances," which was an amount equaling the sum of the current outstanding principal, current outstanding interest, and the amount of fees and costs that would be due if the borrower paid the full principal and interest on the loans at issue as of the date of the letter.

75.    Defendants sent individually customized letter templates referring to "current balance" as described in Paragraph 30 above to more than 40 individuals with West Virginia addresses during the four years preceding the filing of this lawsuit.

76.    At some point during the four years preceding this lawsuit, Defendants used one or more letter template(s) which stated that the Department of Education "indicated" that the "entire balance as indicated above is due and payable"

77.    Defendants sent individually customized letter templates stating that the Department of Education "indicated" that the "entire balance as indicated above is due and payable" to more than 40 individuals with West Virginia addresses during the four years preceding the filing of this lawsuit.

78.     The class is so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Ms. Oakley; however, they are readily available from Defendant's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

79.     This action involves questions of law and fact common to the class which predominate over questions affecting individual class members, specifically whether collection letters sent by Defendants and received by Plaintiff and class members constitute fraudulent, deceptive, or misleading representations or means as outlined in *West Virginia Code* § 46A-s-127.

80.     Ms. Oakley has displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class, and is represented by skillful and knowledgeable counsel. Ms. Oakley's interests do not conflict with those of the class and the relief sought by Ms. Oakley will inure to the benefit of the class generally.

81.     The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendant.

82.     The actions of Defendants are generally applicable to the class as a whole and to Plaintiff. For example, the class members can prove the elements of their claims against Defendants for violations of the *West Virginia Consumer Credit and Protection Act* ("WVCCPA") on a class-wide basis using the same evidence that Ms. Oakley and individual class members would use to prove those claims in individual civil actions.

83.     Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Defendants and it would be impracticable for the class members to individually seek redress for Defendant's wrongful conduct.

84.     Even if the members of the class could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Defendants would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the court in adjudicating the claims against Defendants. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small claimants.

85.     The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

86.     Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

87.     Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

88.     The damages in this case are set by statute and generally preclude the necessity of a case-by-case assessment of damages by the court. To the extent case-by-case assessment is necessary, Defendants maintain computerized individual account information, and that information can easily be reviewed and assessed electronically.

89.     Ms. Oakley's claims are typical of those of the class as a whole, and Ms. Oakley is capable of and willing to represent the other members of the class.

## CLASS CLAIM

### VIOLATION OF THE WVCCPA, W. VA. CODE
### §§ 46A-2-1 -127, -127(d), -127(f), -127(h)

90.     At all times relevant to this matter, Plaintiff and class members were "consumers" and their student loans constituted "claims" as those terms are defined in *West Virginia Code* § 46A-2-122(a)-(b) because Plaintiff and class members are natural persons allegedly obligated to pay money arising from transactions that were primarily for the personal purpose of obtaining an education.

91.     At all times relevant to this matter, Defendants were "debt collectors" engaged in "debt collection" under *West Virginia Code* § 46A-2-122(c)-(d) because they are organizations which engaged directly or indirectly in debt collection when they solicited claims owed or due from Plaintiff and class members.

92.    Defendants sent to Plaintiff and class members' letters containing tables substantially similar to the following to illustrate the amount demanded.

| ACCOUNT NO. | PRINCIPAL BAL | INTEREST |
|---|---|---|
| xxxxxx5546 | $51,003.10 | $12,758.20 |
| **PENALTY CHARGES** | **\*FEES & COSTS** | **CURRENT BALANCE** |
| $0.00 | $11,431.47 | $75,223.17 |
| **DO NOT SEND CASH MAKE CHECKS PAYABLE TO:** | **AMOUNT PAID** | |

U.S. DEPARTMENT OF EDUCATION. USE ACCOUNT NUMBER LISTED ABOVE ON YOUR CHECK. RETURN THIS PORTION WITH YOUR PAYMENT.
**Contact Performant Recovery, Inc. at 1-800-963-0347**

93.    By listing "fees & costs" equaling the maximum amount of fees and costs that could be due as of the date of the letter sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(d), that the fees and costs were an unavoidable fixed expense which Plaintiff and class members had already incurred as part of their debt and which must be paid in full to resolve the debt.

94.    By including the maximum fees and costs possible in the "current balance" in collection letters sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(d) that the fees and costs were an unavoidable fixed expense which Plaintiff and class members had already incurred as part of their debt and which must be paid in full to resolve the debt.

95.    By listing "fees & costs" equaling the maximum amount of fees and costs that could be due as of the date of the letter sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(h) that the

fees and costs were an unavoidable fixed expense for collection services already rendered by Defendants.

96.     By including the maximum fees and costs possible in the "current balance" in collection letters sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(h) that the fees and costs were an unavoidable fixed expense for collection services already rendered by Defendants.

97.     Defendants' Collection Letters stated that, **"ED has indicated your entire balance as indicated above is due and payable. As of the date of this letter, you owe the balance indicated above."**

98.     By stating that "ED" (defined in the Collection Letter as the Department of Education) "indicated" that the "entire balance" reflected in the collection letters sent to Plaintiff and class members was due and payable as of the date of the letter, Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(d), that the fees and costs were an unavoidable fixed expense which Plaintiff had already incurred.

99.     Stating that the Department of Education was the party which "indicated" that the "entire balance" reflected in the collection letters sent to Plaintiff and class members was due and payable as of the date of the collection letters, created a false impression, in violation of *West Virginia Code* § 46A-2-127(f), that the government, via the Department of Education, agreed with and approved of the amount demanded in the collection letter when in fact the "current balance" was calculated by Defendants and Defendants did not secure Department of Education review or approval of the collection letters referenced in this matter.

100.    Representing that Plaintiff and class members "owe the balance" reflected in the collection letters as of the date on the collection letters, falsely represented or implied in violation of *West Virginia Code* § 46A-2-127(h) that the fees and costs were an unavoidable fixed expense for collection services already rendered by Defendants.

101.    Defendants' collection letters sent to Plaintiff and class members contained a statement identical to or substantially similar to the following: "**Because of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater**."

102.    Defendants falsely represented or implied, in violation of *West Virginia Code* § 46A-2-127(d), that the amount paid by Plaintiff and class members would never be less than the current balance reflected in the collection letters by stating that the amount due on the day they pay could be greater than the balance reflected in the collection letters when in fact the amount due on the day they pay could be less.

103.    As the result of the violation of the WVCCPA, Ms. Oakley and the class of consumers that she represents are entitled to recover from the Defendants: actual damages, statutory penalties pursuant to *West Virginia Code* § 46A-5-101(1) as adjusted for inflation pursuant to *West Virginia Code* § 46A-5-106, as well as their reasonable attorney fees, court costs and fees, as provided by *West Virginia Code* § 46A-5-104.

**WHEREFORE,** Plaintiff prays that the Court enter judgment against the Defendants and for the Plaintiff and the Class for the following:

1.    Actual and compensatory damages for the Plaintiff and class members' general and special damages set forth above;

2.      Statutory damages for Plaintiff and class members adjusted for inflation provided

for in the *West Virginia Consumer Credit and Protection Act*;

3.      An award of interest, costs, and attorney fees for Plaintiff and class members; and

4.      Such other relief as the Court deems equitable and just for Plaintiff and class

members.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

**CARLA OAKLEY, on behalf of herself and**
**all others similarly situated**

BY COUNSEL

*/s/ Jonathan R. Marshall*
Jonathan R. Marshall (WVSB #10580)
 Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 facsimile
jmarshall@baileyglasser.com

Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Road
Suite 300
Cherry Hill, New Jersey 08002
pkipnis@baileyglasser.com

Steven R. Broadwater, Jr. (WVSB #11355)
P. 0. Box 959
Fayetteville, WV 25840
(304) 574-2727
sbroadwater@hamiltonburgess.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

CARLA OAKLEY, on behalf of herself and
all others similarly situated,                                    PLAINTIFF

v.                                                               CIVIL ACTION No. 1:21-00021

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
PERFORMANT RECOVERY, INC.,                                        DEFENDANTS


**Certificate of Service**

I hereby certify that on this 28th day of October 2021, Plaintiff's **SECOND AMENDED CLASS ACTION COMPLAINT** was served on counsel of record through the Court's CM/ECF system, which will notify the following CM/ECF participants:

Albert C. Dunn , Jr.
BAILEY & WYANT
P. O. Box 3710
Charleston, WV 25337-3710
Email: adunn@baileywyant.com

*Counsel for Defendant Coast Professional, Inc.*

Alex J. Zurbuch
Joseph M. Ward
FROST BROWN TODD
United Bank, Suite 1100
500 Virginia Street East
Charleston, WV 25301
Email: azurbuch@fbtlaw.com
jward@fbtlaw.com

*Counsel for Defendants Performant Recovery, Inc.
and Performant Financial Corp.*

*/s/ Jonathan R. Marshall*
Jonathan R. Marshall (WVSB #10580)