UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

CARLA OAKLEY, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.                                                  Case No. 1:21-cv-00021-DAF

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL
CORP., and PERFORMANT
RECOVERY, INC.

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION BY PERFORMANT FINANCIAL CORP.

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Performant Financial Corp. ("PFC") moves for entry of an Order dismissing with prejudice all counts against it in the Second Amended Complaint ("SAC") (Doc. 56) for lack of personal jurisdiction. Once again, Plaintiff has failed to meet its "substantial burden" to demonstrate personal jurisdiction over PFC based on an alter ego theory. Mem. Op. at 12 (Doc. 53).

In its Memorandum Opinion dismissing Plaintiff's First Amended Complaint ("FAC") without prejudice, this Court granted Plaintiff leave to amend, explaining she "may be able . . . to bridge the gap and make a prima facie case for alter ego personal jurisdiction." Mem. Op. at 13 (Doc 53). She has not done so.

### I.     Background

*The Original Complaint*. Plaintiff filed this lawsuit on April 2, 2020, in the Circuit Court of Mercer County, West Virginia, naming only co-defendant Performant Recovery, Inc. ("PRI"), a wholly-owned subsidiary of PFC. *See* Original Complaint, attached as (Doc. 11-4). In the Original Complaint, Plaintiff alleged that charges set forth in a collection letter she received from PRI were statutorily prohibited by the West Virginia Consumer Credit and Protection Act ("WVCCPA"). *See* Doc. 11-4 at ¶ 1 ("This action arises as a result of Defendant, Performant Recovery, Inc. . . . assessing illegal costs and fees from Plaintiff . . . in debt collection letters.").

The collection letter (the "Letter") is explicitly addressed to Plaintiff *from* PRI. *See* Letter, (Doc. 11-1). The Letter was attached to right-to-cure correspondence from Plaintiff's counsel, which was directed to the attention of PRI. *Id.* The right-to-cure correspondence only referred to PRI. *Id.* It did not mention PFC.

*The First Amended Complaint*. PRI moved for dismissal of the Original Complaint on August 19, 2020. *See* Doc 1-1 at 1. PRI's motion to dismiss was set for hearing for December 2, 2020. *See id.*[1] Instead of responding to the merits of PRI's motion to dismiss, Plaintiff amended the Original Complaint and filed the FAC on November 24, 2020, naming two new parties—co-defendant Coast Professional, Inc. ("Coast") and PFC. Plaintiff included specific allegations against Coast in the FAC. *See, e.g.*, FAC (Doc 1-2) at ¶¶ 24, 25, 26, 37. This is unremarkable given that, in the Letter, Coast is listed as the primary contractor with the U.S. Department of Education.[2] *See* Doc. 11-1(providing "The U.S. Department of Education (ED), the current creditor and holder of your defaulted student loan . . . has referred your account to Coast Professional, Inc. (Coast) for collection."). The Letter follows: "Coast has authorized Performant [previously defined in the letter as Performant Recovery, Inc.], as a subcontractor, to act on their behalf to assist in the resolution of your account."). *Id.*

2

PFC moved to dismiss the FAC for lack of personal jurisdiction, contending that the FAC (1) was devoid of allegations sufficient to demonstrate jurisdiction over PFC under a minimum contacts analysis, and (2) failed to plead facts justifying a piercing of the corporate veil under an alter ego jurisdictional theory. In response, Plaintiff conceded that this Court "does not have general jurisdiction over defendant PFC because it is incorporated in Delaware and its principal place of business is located in California." Opp. Mot. Dismiss (Doc 21) at 4.

As for specific jurisdiction, Plaintiff's opposition relied solely on an alter ego theory. *See* Opp. Mot. Dismiss (Doc 21) at 5–9. Indeed, this Court correctly noted that Plaintiff's "case for personal jurisdiction against PFC rises or falls based on the alter ego theory of personal jurisdiction." Mem. Op. (Doc. 53) at 5. Because "the only allegation in the FAC in support of the alter ego theory [was] that PFC operates as a single entity"—a "threadbare" allegation—the allegations in the FAC were "insufficient to make a prima facie case for alter ego personal jurisdiction." *Id.* at 5–6, 13. On October 14, 2021, this Court dismissed the FAC without prejudice and granted leave for Plaintiff to amend the FAC. *See id.* at 13.

*The Second Amended Complaint.* On October 28, 2021, Plaintiff filed the SAC, adding allegations that are still insufficient to support of an alter ego jurisdictional theory, showing yet again that PFC does not belong in this lawsuit.

PFC moves to dismiss the SAC for the following reasons.[1]

**II.  Argument**

This Court lacks jurisdiction over PFC under Federal Rule of Civil Procedure 12(b)(2). When a court's personal jurisdiction is challenged, "the burden [is] on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs, Inc. v. Akzo, N.V.*,

---

[1] For purposes of appellate preservation, PFC incorporates by reference its arguments supporting prior motions to dismiss the First Amended Complaint in this case. *See* Docs 9–12.

3

2 F.3d 56, 59–60 (4th Cir. 1993). However, in the context of a dismissal motion without an evidentiary hearing, the plaintiff must only prove "a prima facie case of personal jurisdiction." *Id.*

For a court to exercise personal jurisdiction over a non-resident defendant, "a statute must authorize service of process on the non-resident defendant," and "the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). Federal courts have interpreted West Virginia's long-arm statute to be coextensive with the full reach of due process,[2] *see Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987); therefore, "it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Celotex Corp.*, 124 F.3d at 627–28. Rather, this Court's inquiry should focus on whether exercising personal jurisdiction over PFC is consistent with due process. *See id.*

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts must be "purposeful," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), which "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Celotex Corp.*, 124 F.3d at 628 (internal quotation marks omitted).

In the SAC, Plaintiff asserts personal jurisdiction over PFC exists based on a corporate "alter ego" theory of jurisdiction. Federal courts have acknowledged "it is compatible with due process

---

[2] Even though the Supreme Court of Appeals of West Virginia still applies a two-part personal jurisdiction test, suggesting that the West Virginia long-arm statute is *not* coextensive with the reach of due process, *see* Mem. Op. (Doc 53) at 5, Plaintiff's claims still fail because she cannot satisfy the due process inquiry as explained herein.

4

for a court to exercise personal jurisdiction over an individual that would not ordinarily be subject to personal jurisdiction in that court when the individual is an alter ego of a corporation that would be subject to personal jurisdiction in that court." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (alterations and internal quotation marks omitted). Plaintiff asserts PRI is the alter ego of PFC, and because this Court possesses personal jurisdiction over PRI, it must also possess personal jurisdiction over PFC. Not so.

A. **Legal Background**

In order to determine whether PRI is the alter ego of PFC, this Court looks to West Virginia law. *See Newport News*, 650 F.3d at 434 (applying forum state law in personal jurisdiction analysis). Under West Virginia law, the allegations in the SAC are not sufficient to show a prima facie case that PRI is an alter ego of PFC such that the corporate veil should be pierced.

The law presumes that separately incorporated businesses—such as PRI and PFC—"are separate entities and that corporations are separate from their shareholders." *S. Elec. Supply Co. v. Raleigh Cty. Nat. Bank.*, 320 S.E.2d 515, 523 (W. Va. 1984). Thus, a party seeking to pierce the corporate veil has a "heavy burden." *Tucker v. Thomas*, 853 F. Supp. 2d 576, 590 (N.D.W. Va. 2012).

> [T]he corporate form will never be disregarded lightly. The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure. Nor is mutuality of interest, without the countermingling of funds or property interests, or prejudice to creditors, sufficient. Rather it must be shown that the corporation ***is so organized and controlled as to be a mere adjunct or instrumentality of the other***.

*S. States Co-op., Inc. v. Dailey*, 280 S.E.2d 821, 827 (W. Va. 1981) (citations omitted) (emphasis added). It is the "extent of control" of the non-resident corporation over the corporation subject to the state's jurisdiction that matters. *Norfolk S. Ry. Co. v. Maynard*, 437 S.E.2d 277, 281 (W. Va.

1993). Whether an entity has made a prima facie showing of alter ego status is determined on a case by case basis, with consideration of the following factors:

>(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;
>
>(2) Whether the parent and subsidiary corporations have common directors and officers;
>
>(3) Whether the parent corporation finances the subsidiary;
>
>(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
>
>(5) Whether the subsidiary has grossly inadequate capital;
>
>(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
>
>(7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
>
>(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
>
>(9) Whether the parent corporation uses the property of the subsidiary as its own;
>
>(10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
>
>(11) Whether the formal legal requirements of the subsidiary are not observed.

*Id.* at 282 (citing *Bielicki v. Empire Stevedoring Co., Ltd.*, 741 F. Supp. 758, 761–62 (D. Minn. 1990)).

### B. The allegations in the SAC do not demonstrate a prima facie alter ego relationship.

The SAC alleges that PRI is the alter ego of PFC, but the allegations in the SAC fall well short of a prima facie showing that PFC exerts a sufficient degree of control over PRI.

PFC reasserts that PRI is a wholly owned subsidiary and that PFC's financial statements provide that PFC and its subsidiaries are managed and operated as one business with the same CEO. SAC ¶¶ 11–15, 30. But a "parent-subsidiary relationship between corporations" is not enough. *Norfolk S.*, 437 S.E.2d at 281; *see Int'l Union, United Mine Workers of Am. v. CONSOL Energy, Inc.*, 465 F. Supp. 3d 556, 582 n.18 (S.D.W. Va. 2020) ("[A] parent-subsidiary relationship does not by itself support jurisdiction." (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005)). Further, a parent company's "prudent oversight of its subsidiary's budgets and recurring expenditures in order to track its investments . . . falls within the range of normal parent/subsidiary conduct as a matter of law." *S.C. Elec. & Gas Co. v. UGI Utilities, Inc.*, No. 2:06-cv-02627, 2012 WL 1432543, at *13 (D.S.C. Apr. 11, 2012) (citing *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)).

Plaintiff next alleges PFC's Board of Directors oversees the activities of PRI and consumer complaints about PRI are known by PFC's Board. SAC ¶¶ 16–18. These are unremarkable allegations showing nothing more than a "close business relationship," which is insufficient to show an alter ego relationship. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 545 (4th Cir. 2013).

Plaintiff also asserts that PFC and PRI share a common address and some overlapping officers. SAC ¶¶ 34–37. But "[s]hared office space does not show a subsidiary is an alter ego of the parent." *Adkins v. CSX Transportation, Inc.*, No. CV 3:18-0321, 2020 WL 3130302, at *3 (S.D.W. Va. June 11, 2020). Moreover, "[i]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the

parent corporation to liability for its subsidiary's acts." *W. Va. Highlands Conservancy, Inc. v. Pub. Serv. Comm'n of W. Va.*, 527 S.E.2d 495, 502 (1998) ((quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)); *see also Adkins v. CSX Transportation, Inc.*, No. CV 3:18-0321, 2020 WL 3130302, at *3 (S.D.W. Va. June 11, 2020) (citing with approval *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2012 WL 13040407, at *3 (S.D. Tex. Oct. 23, 2012) (holding that common ownership, a shared corporate headquarters, and shared officers and directors did not establish an alter ego relationship)).

Finally, Plaintiff details a solitary situation where, in 2012, PFC characterized subsidiary Performant Business's long-term debt as its own debt in Securities and Exchange Commission filings, and an assignment of PRI's trademark (which PFC obtained for PRI at no charge) was used in satisfaction of that debt in 2015. SAC ¶¶ 19–29. If Plaintiff is attempting to show PFC "pays the . . . expenses or losses of the subsidiary," or "uses the property of [PRI] as its own," *Norfolk S.*, 437 S.E.2d at 282, her effort falls flat. First, this situation occurred nearly a decade ago, and the long-term debt belonged to a different subsidiary of PFC. Second, the fact that PRI had its own trademark certainly does not support the notion that PRI is "so organized and controlled as to be a mere adjunct or instrumentality of" PFC. *S. Elec. Supply Co. v. Raleigh Cty. Nat. Bank*, 320 S.E.2d 515, 522 (W. Va. 1984); *see also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 392 (4th Cir. 2018) (alter ego parent and subsidiary "are effectively the same entity"). If anything, this fact cuts the other way.

In sum, Plaintiff's new allegations, taken individually and together, are insufficient—they may show a business relationship between PFC and PRI, but they do not show an alter ego relationship. *See Haas v. Antero Res. Corp.*, No. 1:17CV108, 2018 WL 6596869, at *9 (N.D.W. Va. Dec. 14, 2018) (holding that wholly owning a subsidiary, some shared officers and directors,

and the allegation of "significant overlap in corporate control" fall "woefully short" of plausibly supporting alter ego liability); *A2C2 P'ship, LLC v. Constellation Software Inc.*, No. 14-0960, 2015 WL 6143409, at *3 (W. Va. Oct. 16, 2015) (rejecting alter ego argument where subsidiary was "wholly owned by" the corporation, the corporation made acquisition funding available to its subsidiaries, and corporation's board of directors established and approved uniform corporate policies that were applicable to its subsidiaries).

### III. Conclusion

For these reasons, this Court should dismiss all counts against PFC in the Second Amended Complaint with prejudice.

Respectfully submitted,

*/s/ Alex J. Zurbuch*
Joseph M. Ward, Esq. (WVSB #9733)
Alex J. Zurbuch, Esq. (WVSB #12838)
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301-3207
Telephone: (304) 345-0111
Facsimile: (304) 345-0115
jward@fbtlaw.com
azurbuch@fbtlaw.com

*Counsel for Performant Financial Corp.*

9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD DIVISION

CARLA OAKLEY, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.                                            Case No. 1:21-cv-00021-DAF

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL
CORP., and PERFORMANT
RECOVERY, INC.

    Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that, on this day November 12, 2021, a true and correct copy of the foregoing was served on all counsel of record, via the Courts ECF system:

                                              */s/ Alex J. Zurbuch*
                                              Joseph M. Ward, Esq. (WVSB #9733)
                                              Alex J. Zurbuch, Esq. (WVSB #12838)
                                              FROST BROWN TODD LLC
                                              500 Virginia Street East, Suite 1100
                                              Charleston, WV 25301-3207
                                              Telephone: (304) 345-0111
                                              Facsimile: (304) 345-0115
                                              jward@fbtlaw.com
                                              azurbuch@fbtlaw.com

0145384.0734596    4862-9143-0403v1