IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CARLA OAKLEY, on behalf
Of herself and all others
similarly situated,

    Plaintiff,

v.                                    CIVIL ACTION NO. 1:21-00021

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
and PERFORMANT RECOVERY, INC.

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the renewed motion of defendant Performant Financial Corp. ("PFC") to dismiss for lack of personal jurisdiction.[1]  (ECF No. 62.)  For the reasons that follow, the court will deny the motion.

**I.  Background**

The court has previously summarized the general background to this case and will not do so again here.  (See ECF Nos. 53 and 59.)  Plaintiff's assertion that this court has personal jurisdiction over PFC depends on whether PFC's subsidiary,

---

[1] The court granted PFC's previous motion but also granted plaintiff leave to amend.  (See ECF No. 53.)  PFC now moves to dismiss the operative complaint for lack of personal jurisdiction.

Performant Recovery, Inc. ("PRI"),[2] is the alter ego of PFC.  The court previously found as follows:

> While plaintiff's opposition memorandum catalogues facts in support of the alter ego theory, the only allegation in the [First Amended Complaint] in support of the alter ego theory is that PFC operates as a single entity.  This is too threadbare.  But because amendment does not appear futile, the court will grant leave to amend.

(ECF No. 53, at 5-6.)

The Second Amended Class Action Complaint ("SAC") similarly alleges, "Defendant Performant Financial Corporation and its wholly owned subsidiaries are managed and operated as one business, with a single management team that reports to the Chief Executive Officer."  (ECF No. 56, SAC ¶ 15.)  It also quotes from PFC's Form 10-Ks, filed with the U.S. Securities and Exchange Commission, acknowledging that PFC does operate "as one business."  (Id. at ¶¶ 12, 13.)

Unlike its predecessor, the SAC goes into greater detail regarding the nature of the relationship between PFC and PRI:

> [PFC]'s Board of Directors oversee the activities of Defendant [PFC] and all of its subsidiaries, including Defendant [PRI].

> Consumer complaints, whether made directly to Defendant [PFC], Defendant [PRI], or a third-party are reported, summarized, or referred to in reports to or meetings with Defendant [PFC]'s Board of Directors and/or Audit Committee.

---

[2] The parties agree that this court has personal jurisdiction over PRI, which has filed an answer to the operative complaint.

Defendant [PFC] is the entity registered with the
Consumer Financial Protection Bureau to respond to
consumer complaints about [PRI].

On March 19, 2012, Defendant [PFC]'s wholly owned
subsidiary, DCS Business Services, Inc., entered into
a Credit Agreement with Madison Capital Funding LLC
("2012 Credit Agreement").

Defendant [PFC] categorized the 2012 Credit Agreement
as [PFC]'s "Long-term Debt" in its filing with the
Securities and Exchange Commission during the pendency
of the Credit Agreement.

Defendant [PFC] categorized the 2012 Credit Agreement
as Performant Financial Corporation's "Long-term Debt"
in its filing with the Securities and Exchange
Commission during the pendency of the Credit
Agreement.

Defendant [PFC] was bound by the negative covenants of
the 2012 Credit Agreement.

On April 12, 2012, Defendant [PFC] filed to register
the trademark "Performant Recovery" with the United
States Patent and Trademark Office.

Prior to November 12, 2012, DCS Business Services,
Inc. changed its name to Performant Business Services,
Inc., also a wholly-owned subsidiary of Defendant
[PFC].

On or near January 20, 2015, Defendant [PFC] recorded
an assignment of its entire interest in the
"Performant Recovery" trademark (Performant Recovery
Mark") to Defendant [PRI] with the United States
Patent and trademark Office.
(https://assignments.uspto.gov/assignments/q?db=tm&sno
=86287717 ) (last accessed Oct. 27, 2021).

Upon information and belief, [PFC] did not require
payment from Defendant [PRI] for the assignment of the
Performant Recovery mark.  On or near February 12,
2015, [PFC] filed a correction with the United States
Patent and Trademark Office regarding its assignment
of the Performant Recovery mark to Defendant [PRI].

3

(https://assignments.uspto.gov/assignments/q?db=tm&sno
=86287717 ) (last accessed Oct. 27, 2021).

On or near April 15, 2015, Defendant [PRI] conveyed a
security interest in the trademark "Performant
Recovery" to Madison Capital Funding, LLC.
(https://assignments.uspto.gov/assignments/q?db=tm&sno
=86287717 ) (last accessed Oct. 27, 2021).

Defendant [PRI]'s conveyance of the Performant
Recovery mark to Madison Capital Funding, LLC was
required because certain conditions described in the
2012 Credit Agreement had come to pass.

Upon information and belief, Performant Business did
not pay Defendant [PRI] for the conveyance of its
interest in the Performant Recovery mark to Madison
Capital Funding, LLC.

Defendant [PFC]'s consolidated financial statements
include the operations of Defendant [PRI].

Defendant, [PRI] conducts business in this County and
State and maintains a principal place of business in
Lathrop, California.

The California Secretary of State lists Defendant
[PRI]'s address as 333 N Canyons PKWY STE 100
Livermore, CA 94551.

The California Secretary of State's website lists
Defendant [PFC]'s "Entity Address" and "Mailing
Address" as 333 North Canyons Parkway, Suite 100
Livermore CA 94551.

Lisa Im is the Chief Executive Officer for Defendant
[PFC].

Lisa Im is the Chief Executive Officer of Defendant
[PRI].

Ian Johnston is the Vice President and Chief
Accounting Officer for Defendant [PFC].

Ian Johnston is the Chief Financial Officer of
Defendant [PRI].

4

> [PFC] cannot legally be separated from the actions of
> [PRI] and vice versa because of the overlap in their
> finances, assets, goals, duties, personnel,
> governance, property, and location.

(Id. at ¶¶ 16-38.)

Plaintiff and PFC now dispute whether the allegations of
the SAC sufficiently allege an alter ego relationship between
PFC and PRI for purposes of personal jurisdiction.

**II.  Legal Standard**

The United States Court of Appeals for the Fourth Circuit
has described the general framework for resolving a threshold
personal jurisdiction challenge such as this one as follows:

> When personal jurisdiction is properly challenged
> under Rule 12(b)(2), the jurisdictional question is to
> be resolved by the judge, with the burden on the
> plaintiff ultimately to prove grounds for jurisdiction
> by a preponderance of the evidence.  When, however
> . . . a district court decides a pretrial personal
> jurisdiction motion without conducting an evidentiary
> hearing, the plaintiff need only make a prima facie
> showing of personal jurisdiction.  In deciding whether
> the plaintiff has made the requisite showing, the
> court must take all disputed facts and reasonable
> inferences in favor of the plaintiff.

Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334
F.3d 390, 396 (4th Cir. 2003) (citations omitted).

Federal courts must analyze whether the assertion of
personal jurisdiction comports not only with the law of the
forum state (the state's long-arm statute), but also with due
process.  Id. at 396.  These two inquiries naturally merge into
one when the forum state's law provides for the exercise of

5

personal jurisdiction to the outermost limits of due process. Id. at 396-97.

Whether the two inquiries merge in West Virginia is unclear.  A district court is bound to apply the forum state's long-arm statute as interpreted by its high court (although federal interpretations remain persuasive authority).  Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61, 61 n.5 (4th Cir. 1993).  Despite statements in opinions of federal courts that West Virginia's long-arm statute is coextensive with the boundaries of due process, see, e.g., In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997), the Supreme Court of Appeals of West Virginia describes its personal jurisdiction analysis as a "two-part inquiry."  State ex rel. Third-Party Defendant Health Plans v. Nines, 244 W. Va. 184, 852 S.E.2d 251, 259 (2020) (Armstead, C.J.); see also Syl. pt. 3, State ex rel. Ford Motor Co. v. McGraw, 237 W. Va. 573, 788 S.E.2d 319, 323 (2016) ("A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident.").

The consistent assertion by the state's high court that there are two steps in the personal jurisdiction analysis suggests that West Virginia's long-arm statute, W. Va. Code, § 56-3-33, is possibly not coextensive with the limits of due process after all.  The parties agree, however, that the court

6

need only determine whether the exercise of personal
jurisdiction over PFC comports with due process.  More
specifically, the question here is whether the allegations of
the SAC, together with the benefit of all reasonable inferences
in favor of plaintiff, state a prima facie case for the
existence of an alter ego relationship for purposes of personal
jurisdiction.

**III. Discussion**

The allegations here survive the motion to dismiss because,
at least for jurisdictional purposes, they support the inference
that PFC and PRI do not have separate corporate personalities.
Without separate corporate personalities, an alter ego
relationship exists for jurisdictional purposes such that PRI's
minimum contacts with West Virginia are attributable to PFC.  To
be sure, this inference is not ultimately required under the
allegations, even if proved.  At this stage, however, the
allegations blur the line between the two companies sufficiently
such that dismissal for lack of personal jurisdiction is not
presently warranted.

Due process requires "'minimum contacts' with the forum,
such that to require the defendant to defend its interests in
that state 'does not offend traditional notions of fair play and
substantial justice.'"  Carefirst, 334 F.3d at 397 (quoting
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A

party may establish personal jurisdiction over a parent corporation that does not otherwise have sufficient minimum contacts when (1) there is personal jurisdiction over the parent's subsidiary; and (2) the subsidiary is the parent's alter ego.  See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433-34 (4th Cir. 2011).

This court looks to West Virginia law to determine whether PRI is the alter ego of PFC.  See Id. at 434 (applying forum state law in reviewing finding of personal jurisdiction under alter ego theory); see also Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) ("In applying the alter-ego theory of personal jurisdiction in this diversity action, we must look to Ohio law.").

To ask whether there exists an alter ego relationship between a parent corporation and its subsidiary is to ask whether it is appropriate to pierce the corporate veil between them.  See Virtual City, 650 F.3d at 434 (looking to Virginia law of piercing the veil on question of alter ego jurisdiction theory).  It is natural that these questions are the same because the doctrine of piercing the corporate veil is one of the "alter ego doctrines."  See S. Elec. Supply Co. v. Raleigh Cty. Nat. Bank., 320 S.E.2d 515, 521-22 (W. Va. 1984). Accordingly, the basic inquiry here is whether the allegations

are sufficient to show that the corporate veil between PFC and PRI should be pierced under West Virginia law.

"The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders." Id. at 516. While the separation between a corporation and its owners is a legal fiction, that fiction is a formidable one, and the party seeking to pierce the corporate veil carries a "heavy burden." See Tucker v. Thomas, 853 F. Supp. 2d 576, 590 (N.D.W. Va. 2012). "The doctrine is complicated, and it is applied gingerly." S. Elec., 320 S.E.2d at 522. As the court explained in Southern States Co-op., Inc. v. Dailey:

> [T]he corporate form will never be disregarded lightly. The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure. Nor is mutuality of interest, without the countermingling of funds or property interests, or prejudice to creditors, sufficient. Rather it must be shown that the corporation is so organized and controlled as to be a mere adjunct or instrumentality of the other.

280 S.E.2d 821, 827 (W. Va. 1981).

Later West Virginia opinions have set forth a two-part test for disregarding the corporate form: (1) a unity of interest to such an extent that the corporation and its shareholders have lost their "separate personalities" and (2) an inequitable result but for the disregard of the corporate form. See syl.

pt. 6, Kubican v. The Tavern, LLC, 752 S.E.2d 299, 301 (W. Va. 2013) (quoting syl. pt. 3, in part, Laya v. Erin Homes, Inc., 352 S.E.2d 93 (W. Va. 1986)).

The application of this test "requires a fact-driven analysis that is specific to each case."  Dailey v. Ayers Land Dev., LLC, 825 S.E.2d 351, 360 (W. Va. 2019).  In making this "case-by-case" determination, "some of the relevant factors" are the following:

> (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
>
> (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);
>
> (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;
>
> (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;
>
> (5) failure to maintain corporate minutes or adequate corporate records;
>
> (6) identical equitable ownership in two entities;
>
> (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);
>
> (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;
>
> (9) absence of separately held corporate assets;

10

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;

(18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;

(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

Dailey v. Ayers Land Dev., LLC, 825 S.E.2d 351, 360 (W. Va. 2019).

However, when the issue is jurisdictional veil piercing (as opposed to substantive veil piercing), a different, smaller set of factors may inform the analysis.  In Norfolk S. Ry. Co. v. Maynard, the court appeared to adopt a set of eleven factors that had been used in the District of Minnesota:

(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;

(2) Whether the parent and subsidiary corporations have common directors and officers;

(3) Whether the parent corporation finances the subsidiary;

(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) Whether the subsidiary has grossly inadequate capital;

(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

(7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(9) Whether the parent corporation uses the property of the subsidiary as its own;

12

(10) Whether the directors or executives of the
subsidiary do not act independently in the interest of
the subsidiary but take their orders from the parent
corporation in the latter's interest; and

(11) Whether the formal legal requirements of the
subsidiary are not observed.

437 S.E.2d 277, 282 (W. Va. 1993).

Norfolk Southern was decided several years after the debut
of the nineteen factors previously mentioned.  See Laya, 352
S.E.2d at 99.  Thus, the court appears to have made a conscious
choice to treat jurisdictional veil piercing differently.  Such
a choice would be consistent with persuasive federal authority
suggesting that when the question is whether to pierce the veil
for jurisdictional purposes only, courts should temper the
typically quite exacting test to pierce the veil for substantive
liability.  See Essar Steel Algoma Inc. v. Nevada Holdings, No.
17MISC360ATRWL, 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020)
(describing test as "less stringent"); Transfirst Grp., Inc. v.
Magliarditi, No. 3:16-CV-1918-L, 2017 WL 528776, at *7 (N.D.
Tex. Feb. 9, 2017) (same).  The court will assume that the
Norfolk Southern factors guide the analysis here.  Moreover, the
court is mindful that although plaintiff still bears a
substantial burden to show that the veil should be pierced for

jurisdictional purposes,[3] the full weight of the burden of showing substantive alter ego liability does not rest on plaintiff at this juncture.

By its own alleged admission, PFC does not see itself as a separate company from PRI, and PRI answers to the CEO of PFC. By itself, this alleged admission could reasonably be interpreted to mean that the two companies are simply closely aligned and that the CEO exerts some influence over both.  But it could also reasonably mean that PFC dominates PRI to such a degree that PRI has no separate corporate personality.

The reasonableness of the second interpretation is difficult to see without the additional allegations that the SAC provides.  The SAC alleges that the CEO of both companies is the same person (as well as the CFO).  The SAC suggests that assets have flown between the two companies as if they were one.  The SAC further alleges that the companies operate out of the same office suite, that PFC is registered with a government agency to accept complaints against PRI, and that PRI is beholden to PFC's board of directors.

In context, these allegations may turn out not to amount to very much.  In particular, the free-flow of assets may be

---

[3] "Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent."  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992).

extremely rare or have some explanation tending not to support an alter ego relationship.  Other allegations, such as shared office space and shared officers, could be innocuous.  Also, because West Virginia law stresses the totality of the circumstances so strongly, these allegations, even if true, very likely do not compel the finding that there is an alter ego relationship for jurisdictional purposes.  The allegations of the SAC do, however, appear to support such a finding at this stage.

In Hanson & Morgan Livestock, Inc. v. B4 Cattle Co., the court drew a line between conclusory allegations of alter ego jurisdiction and non-conclusory allegations.  No. CIV A 5:07CV00330, 2008 WL 4066251, at *7-9 (S.D.W. Va. Aug. 27, 2008).  Because the test for substantive veil piercing (for purposes of ultimate liability) in this state is subject to multifarious factors (at least eleven—possibly nineteen—which are expressly not exhaustive), the conclusory/non-conclusory line is a practical one for resolving this issue at the pleading stage without an evidentiary hearing.

The allegations here are not conclusory.  They appear to support the existence of personal jurisdiction on an alter ego theory.  It may turn out that they do not.  If a preponderance of the evidence (once it is in) fails to show that PRI is the alter ego of PFC for jurisdictional purposes, PFC will have to

15

be dismissed.  Until then, the court will assert jurisdiction over PFC.

**IV.  Conclusion**

For the reasons stated above, PFC's motion to dismiss (ECF No. 62) is **DENIED**.  The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 7th day of February, 2022.

ENTER:

David A. Faber
Senior United States District Judge

16