IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CARLA OAKLEY,

    Plaintiff,

v.                             CIVIL ACTION NO. 1:21-00021

COAST PROFESSIONAL, INC.,
PERFORMANT FINANCIAL CORP.,
and PERFORMANT RECOVERY, INC.

    Defendants.

## MEMORANDUM OPINION

On September 29, 2023, the court entered an order granting the motions for summary judgment filed by defendants Coast Professional, Inc. ("Coast"), Performant Financial Corp. ("PFC"), and Performant Recovery, Inc. ("PRI"). The reasons for those decisions follow.

### I.   Background

This is a putative class action alleging deceptive debt collection practices by defendants in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Plaintiff Carla Oakley says defendants violated the WVCCPA when they sent her a letter regarding her defaulted student loans. She says that the letter was deceptive and misleading under the WVCCPA.

A.  *Oakley's Loans*

From 1997 to 2001, Oakley borrowed somewhere between $38,000.00 and $40,000.00 pursuant to the federal direct student loan program.  See ECF No. 149-1 at 4-5; see also Deposition of Carla Oakley, October 18, 2022, at 19-24, 50-55 (hereinafter "Oakley Depo. at ___") (ECF No. 149-2).  After defaulting on those loans, "sometime around the summer of 2009[,]" Oakley contacted the Department of Education ("ED" or "DOE" or "Education") and requested either a deference or forbearance on her loans.  ECF No. 149-1 at 5; Oakley Depo. at 92-93.  Ultimately, she opted to work towards consolidating those loans.  See ECF No. 149-1 at 5.

On January 14, 2010, Oakley applied for a Federal Direct Consolidation Loan to consolidate her student loans.  See ECF No. 149-3; Oakley Depo. at 76.  In her application, Oakley listed three loans that she wanted to consolidate totaling $37,810.00.[1]  See ECF No. 149-3.  On her application, Oakley promised to pay ED "all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this

_____

[1] The application indicates this figure is based on estimated payoff amounts.  See ECF No. 149-3.  Oakley also testified that she had a loan with Great Lakes that is not listed in the application but that she later sought to include in her consolidation loan.  See Oakley Depo. at 58-60.

Note."  Id.  She also agreed that if she "d[id] not make

payments on this Note when due," that she would "also pay

reasonable collection costs, including but not limited to

attorney's fees, court costs, and other fees."  Id.

That same year, Oakley also obtained a Direct Student Loan

from DOE to attend Wake Technical Community College.  Oakley

Depo. at 55, 175-77; see also ECF No. 149-4.

Pursuant to her loan agreement, i.e., the Master Promissory

Note ("MPN"), Oakley agreed to pay reasonable collection costs

if she defaulted on her loans and she further agreed that if she

defaulted, "collection costs will become immediately due and

payable." ECF No. 149-4.  Specifically, she agreed that DOE was

entitled to recover any charges or fees permitted by the Higher

Education Act of 1965, DOE's regulations, and other applicable

federal laws and regulations.  See id.[2]  Those "reasonable

collection costs" would include but not be limited to

_____

[2] The Higher Education Act ("HEA") provides that:
"Notwithstanding any provision of State law to the contrary - -
(1) a borrower who has defaulted on a loan made under this
subchapter shall be required to pay, in addition to other
charges specified in this subchapter, reasonable collection
costs."  20 U.S.C. § 1091a.  The implementing regulations state
that:  "Notwithstanding any provision of State law, if the
Secretary uses a collection agency to collect a debt on a
contingent fee basis, the Secretary charges the debtor, and
collects through the agency, an amount sufficient to recover –
(1) The entire amount of the debt; and (2) The amount that the
Secretary is required to pay the agency for its collection
services."  34 C.F.R. § 30.60.

"attorney's fees, court costs, and other fees."  Id.  Oakley
agreed that any payments would be applied first to late charges
and collection costs then due.  The MPN also advised plaintiff
that payments are applied in the following order:  (1) late
charges and collection costs, (2) outstanding interest, and (3)
principal.  See id.  According to the MPN, if Oakley defaulted
"ED may capitalize all the outstanding interest into a new
principal balance, and collection costs will become immediately
due and payable."  Id.

B.   *Collection of Defaulted Student Loans*

In briefing on the summary judgment motions, the parties
offered the Declaration of Pete Tyrell.  See ECF No. 149-5
(hereinafter "Tyrell Dec. at ¶ ___").  At the time of his
declaration dated February 1, 2023, Tyrell was a Supervisory
Management and Program Analyst at the U.S. Department of
Education.  See id. at ¶ 1.  As part of his position, Tyrell
"ha[d] oversight of the defaulted student loan portfolio held by
Education and of the servicing/collection efforts on the
defaulted loan portfolio" and was "the Program Manager on the
contract for [DOE's] Debt Management Collections System (DMCS),
the computer system that manages loans held by Education that
are in default."  Id. at ¶ 2.

Federal law permits the Secretary of Education to "award
contracts for origination, servicing, and collection" of federal

direct student loans.  20 U.S.C. § 1087f(b).  "Pursuant to the
HEA, 20 U.S.C. § 1080(b) and 20 U.S.C. § 1087(f), [the
Department of] Education contracted with 'private collection
agencies' or 'PCAs' to collect on defaulted student loans owed
to Education."  Tyrell Dec. at ¶ 7; see also ECF No. 149-10 at 2
("Since 1981, ED has contracted for the services of Private
Collection Agencies to support collection and administrative
resolution activities on debts maintained by ED.").  In
connection with these efforts, ED authored a Procedures Manual,
"describ[ing] the procedures and policies for private collection
agencies (PCAs)" to use in its efforts "to collect federal
defaulted student loans."  ECF No. 149-8.  Tyrell "provided
oversight to the [PCA] contracts beginning in (approximately)
the spring of 2018, and continued with that responsibility until
the termination of those contracts in November 2021."  Tyrell
Dec. at ¶ 2.  "PCAs were permitted to enter into subcontracts
with other PCAs."  Id. at ¶ 7.

Tyrell stated that, because of his position, he was
familiar with the laws governing the student financial
assistance programs authorized by the HEA.  See id. at ¶ 3.
Tyrell confirmed that, pursuant to the HEA, buyers in default of
a student loan are required to pay reasonable collection costs
and that any payment received is to be applied first to any
accrued charges and collection costs, then to any outstanding

interest, and finally to outstanding principal.  See id. at ¶¶
4, 6.

Tyrell also explained how "reasonable collection costs"
were calculated.  See id. at ¶ 8.  According to him:

> Education regulations set forth the methodology
> for establishing reasonable collection costs,
> including when a contingent fee payment is incurred
> for collection, as was the case when PCAs were used. .
> . .  Based on that methodology, the contingent fees
> were calculated at a percentage of the total principal
> and interest due.  Education set the collection cost
> rate, established as required by regulations, in each
> PCA contract.  As of October 1, 2018, the collection
> cost rate for collection by PCAs was 17.92% of the
> total principal and interest.

Id.

Significantly, "[s]ince at least January 1, 2016,
Education's practice has been to provide the defaulted borrower
with a total balance due, including the principal, interest, and
collection costs, the borrower would need to pay in order to pay
the loan in full.  Education also directs PCAs to inform
borrowers of the total balance due, including principal,
interest, and collection costs."  Id. at ¶ 9.  Tyrell explained
that "[e]ven though the borrower is informed of the total
balance due (see ¶9), it is only when a defaulted borrower
actually makes a payment that collection costs are applied to a
borrower's account.  The amount of the borrower's payment will
determine how much of that payment is applied to collection
costs."  Id. at ¶ 10.  Tyrell provided a couple of examples to

6

show how the collection fee would be applied for the 17.92% rate in effect as of October 1, 2018.  See id.

    a.   A borrower making a $100 payment would therefore have $17.92 applied towards collection costs, with the remaining $82.08 applied first to unpaid accrued interest and then, if any of the payment remained unapplied, to principal.

    b.   A borrower seeking to pay in full would pay the full amount of collection costs assessed against the total balance owed; thus, a borrower having a total principal and interest balance of $1,000.00 would have to make a payment of 1,179.20 ($179.20 in collection costs, and $1000 towards principal and interest).

Id.

Defaulted borrowers are given 60 days after default to enter in a repayment arrangement.  See id. at ¶ 11.  If they do so, and maintain the payment arrangement made, no collection costs will result.  See id.

*C.   Coast's Contract with the Department of Education*

On September 30, 2014, the DOE contracted with Coast to collect defaulted, nonpaying student loans as a private collection agency ("PCA").  See Declaration of AnnMarie Buchanan at ¶ 6 (hereinafter Buchanan Dec. at ¶ ___"); ECF No. 149-7 (the Contract).  Pursuant to the DOE/Coast contract, the Procedures Manual was incorporated into the contract.  See Buchanan Dec. at ¶ 7; ECF No. 149-7.  The Procedures Manual was updated periodically and, as relevant to this lawsuit, was updated on March 19, 2019.  See Buchanan Dec. at ¶¶ 8, 9; ECF No. 149-8.

Also incorporated into the DOE/Coast contract was a Performance Work Statement that further set forth the duties of PCAs, like Coast, in their collection efforts.  See ECF No. 149-10; Buchanan Dec. at ¶ 11.  Pursuant to the Performance Work Statement, a Contractor, like Coast, "shall obtain ED's approval of all collection letters and forms used by the Contractor, and/or generated from the Contractor's own computer system, prior to usage."  ECF No. 149-10 at 8-9; Buchanan Dec. at ¶ 12. According to Buchanan, Coast "routinely submitted letter templates to DOE for approval consistent with the Performance Work Statement."  Buchanan Dec. at ¶ 12.  Buchanan also stated that "[t]he letter templates for the letters at issue in this case were provided to and approved by DOE."  Id. at ¶ 14.

Pursuant to its Contract with ED, the Procedures Manual, and "direction from DOE, Coast attempted to collect principal, interest, costs and fees."  Id. at ¶ 15.  "Costs and fees included collection costs as determined by DOE" and Buchanan, like Tyrell, confirmed that "[e]ffective October 10, 2018, DOE directed PCAs to calculate collection costs at a rate of 17.92% of principal and interest."  Id. at ¶¶ 15, 16.  Pursuant to the contract between DOE and Coast, DOE paid Coast a commission of 15.2% of any monies collected.  See Buchanan Dec. at ¶¶ 17, 18; ECF No. 149-7.

Coast had the authority to compromise a debt on "an approved payment amount with the borrower that satisfies a large portion of the balance owed[.]"  ECF No. 149-8; Buchanan Dec. at ¶ 19.  A compromise could include a waiver of collection costs.  See ECF No. 149-8, Buchanan Dec. at ¶ 20.  Even if collection costs were waived, Coast would still recover its 15.2% commission on any amounts recovered.  See Buchanan Dec. at ¶ 21.

On June 27, 2018, Coast entered a subcontract with PRI to collect defaulted nonpaying student loans placed with Coast by ED.  See id. at ¶ 22; see also ECF No. 149-11.

D.   Collection Efforts on Oakley's Loans

At some point prior to 2019, Oakley defaulted on her student loans.  See Second Amended Complaint at ¶ 5; ECF No. 151-7 at 2-3 ("Plaintiff defaulted on her student loans because she failed to make payments. . . .  Plaintiff does not deny that she was in default on the loan at issue.").[3]  On July 29, 2018,

---

[3] During her deposition, Oakley testified that she was not sure if she had defaulted on her loans.  See Oakley Depo. at 87-88 ("Q: Do you agree, as you sit here today, that at some point you defaulted on your consolidated federal student loan?  A:  No.  I don't know if I defaulted on it.  I don't know what the status [is].  Q:  So you don't know whether or not you've defaulted on your federal consolidation loan?  A:  No.").  Notwithstanding the foregoing, Oakley also testified that she had not made any payments on her loans since they were consolidated.  See id. at 88 ("Q:  Do you understand that you, you know, didn't make all monthly payments on those loans as necessary?  A:  I haven't made any payments since the consolidation.");  see also ECF No. 151-7 at 3 ("Plaintiff does not believe she ever made any payments on the student loan obligations Defendants attempted to

ED placed Oakley's defaulted student loans with Coast for collection.  See Buchanan Dec. at ¶ 23; ECF No. 149-12.  At the time DOE placed Oakley's loans with Coast, the outstanding principal was $51,033.10, and interest was $10,566.65.  See Buchanan Dec. at ¶ 23; ECF No. 149-12.  DOE instructed Coast to include collection costs at a rate of 24.34% before October 1, 2018, and 17.92% after that date.  See Buchanan Dec. at ¶ 23.  On January 9, 2019, Coast placed Oakley's defaulted loans with PRI for collection.  See id.

By letter dated July 12, 2019, PRI sent a letter to Oakley to attempt to collect her defaulted student loans.  See ECF 151-1.  The letter informed Oakley that it was an "Offer of Assistance" and further informed her that the notice was from Performant and that "[t]he U.S. Department of Education (ED), the current creditor and holder of your defaulted student loan . . . has referred [her] account to Coast Professional, Inc. (Coast) for collection."  Id.  The letter went on to inform Oakley that "Coast ha[d] authorized Performant, as a subcontractor, to act on their behalf to assist in the resolution of [her] account."  Id.  The letter included the following summary regarding the particulars of plaintiff's debt.

_____

collect from her. . . .  Plaintiff does not believe she made any payments before or after consolidation.").

10

| ACCOUNT NO. | | PRINCIPAL BAL | INTEREST |
|---|---|---|---|
| xxxxxx5546 | | $51,003.10 | $12,758.20 |
| PENALTY CHARGES | | *FEES & COSTS | CURRENT BALANCE |
| $0.00 | | $11,431.47 | $75,223.17 |
| DO NOT SEND CASH MAKE CHECKS PAYABLE TO: | | AMOUNT PAID | |

U.S. DEPARTMENT OF EDUCATION. USE ACCOUNT NUMBER
LISTED ABOVE ON YOUR CHECK. RETURN THIS PORTION
WITH YOUR PAYMENT.
**Contact Performant Recovery, Inc. at
1-800-963-0347**

Id.  On the front of the letter, there is a small asterisk

before the label "FEES & COSTS."  Id.  The front of the letter

also states:  "***IMPORTANT INFORMATION CAN BE FOUND ON THE BACK

OF THIS PAGE***"  Id.  On the back of the letter, there is

another asterisk with the following statement:  "This collection

agency fee is not due until the time of payment and the amount

of the fee may decrease at the time of payment depending on the

amount that is ultimately paid."  Id.

The letter also stated that

ED has indicated your entire balance as indicated
above is due and payable.  As of the date of this
letter, you owe the balance indicated above.  Because
of interest or other fees that may vary from day to
day, the amount due on the day you pay may be greater.
We do recognize that many individuals may not be in
the position to pay the entire balance in one payment.
Therefore, Performant is committed to providing
assistance to you in determining the best resolution
to your obligation.  Our consumer care staff is
trained to discuss all available options for repayment
of your debt.

Id.  The letter directed that payments should be made directly

to the ED.  See id.

*E.   The Lawsuit*

Based upon her receipt of the letter, on April 2, 2020, Oakley filed a Class Action Complaint against PRI in the Circuit Court of Mercer County.  See ECF No. 11-4.  In that complaint, Oakley maintained that PRI had violated the WVCCPA because it was "assessing illegal costs and fees from Plaintiff and class members in debt collection letters, which costs and fees were statutorily prohibited and plainly unlawful."  Id. at ¶ 1.

On November 24, 2020, Oakley filed an amended complaint, adding Coast and PFC as defendants.  See ECF No. 1-2.  In that filing, plaintiff maintained that the letter sent to her violated the WVCCPA because it represented that the collection agency's contingency fee was due and owing as part of the "current balance" even though the agency had not yet earned the contingency fee by collecting the debt.  See id. at ¶ 66.  She also alleged that defendants violated the WVCCPA by giving a false impression that the ED calculated or approved of the amounts identified in the collection letter as due and payable.  See id. at ¶ 72.  Coast removed the case to this court pursuant to the Class Action Fairness Act.  See ECF No. 1-1.

All defendants filed motions to dismiss the First Amended Complaint.  Those motions were denied.  A Second Amended Complaint was filed and it is the operative pleading.

According to Oakley's Second Amended Complaint:

12

93.  By listing "fees & costs" equaling the maximum amount of fees and costs that could be due as of the date of the letter sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of West Virginia Code § 46A-2-127(d), that the fees and costs were an unavoidable fixed expense which Plaintiff and class members had already incurred as part of their debt and which must be paid in full to resolve the debt.

94.  By including the maximum fees and costs possible in the "current balance" in collection letters sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of West Virginia Code § 46A-2-127(d) that the fees and costs were an unavoidable fixed expense which Plaintiff and class members had already incurred as part of their debt and which must be paid in full to resolve the debt.

95.  By listing "fees & costs" equaling the maximum amount of fees and costs that could be due as of the date of the letter sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of West Virginia Code 46A-2-127(h) that the fees and costs were an unavoidable fixed expense for collection services already rendered by Defendants.

96.  By including the maximum fees and costs possible in the "current balance" in collection letters sent to Plaintiff and class members, Defendants falsely represented or implied, in violation of West Virginia Code § 46A-2-127(h) that the fees and costs were an unavoidable fixed expense for collection services already rendered by Defendants.

* * *

98.  By stating that "ED" (defined in the Collection Letter as the Department of Education) "indicated" that the "entire balance" reflected in the collection letters sent to Plaintiff and class members was due and payable as of the date of the letter, Defendants falsely represented or implied, in violation of West Virginia Code § 46A-2-127(d), that

the fees and costs were an unavoidable fixed expense which Plaintiff had already incurred.

99.   Stating that the Department of Education was the party which "indicated" that the "entire balance" reflected in the collection letters sent to Plaintiff and class members was due and payable as of the date of the collection letters, created a false impression, in violation of West Virginia Code § 46A-2-127(f), that the government, via the Department of Education, agreed with and approved the amount demanded in the collection letter when in fact the "current balance" was calculated by Defendants and Defendants did not secure Department of Education review or approval of the collection letters referenced in this matter.

ECF No. 56 at ¶¶ 93-96, 98, and 99.

Plaintiff also filed a motion for class certification. While that motion was pending, defendants filed their motions for summary judgment.[4]  Defendants moved for judgment in their favor, arguing that:  (1) the collection letter at issue is not deceptive or misleading within the meaning of the WVCCPA; (2) any alleged misrepresentation or failure to disclose was not material; and (3) disclosure of collection costs was mandated by law and ED and, therefore, plaintiff's claim is preempted by

---

[4] Federal Rule of Civil Procedure 23(c)(1) "affords a district court discretion to rule on a summary judgment motion before ruling on a class certification motion."  White v. Ally Financial Inc., Civil Action No. 2:12-cv-00384, 2013 WL 1857266, at *1 n.1 (S.D.W. Va. May 2, 2013) (addressing motion for summary judgment prior to motion for class certification) (Goodwin, J); see also Snider Intern. Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 144 (4th Cir. 2014) ("Without ruling on the class certification motion, the district court granted summary judgment in favor of the towns.").

federal law.  Coast separately argues that it cannot be held
vicariously liable for the letter sent by PRI.

## II.  Legal Standard

"A party may move for summary judgment, identifying each claim or
defense—or the part of each claim or defense—on which summary judgment
is sought.  The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  The moving party has the burden of establishing that there is
no genuine issue as to any material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  This burden can be met by showing that the
nonmoving party has failed to prove an essential element of the
nonmoving party's case for which the nonmoving party will bear the
burden of proof at trial.  Id. at 322.  If the moving party meets this
burden, according to the United States Supreme Court, "there can be
'no genuine issue as to any material fact,' since a complete failure
of proof concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  Id. at 323.

> Once the moving party has met this burden, the burden
> shifts to the nonmoving party to produce sufficient
> evidence for a jury to return a verdict for that party.
> The mere existence of a scintilla of evidence in support of
> the plaintiff's position will be insufficient; there must
> be evidence on which the jury could reasonably find for the
> plaintiff.  The judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could find, by a
> preponderance of the evidence, that the plaintiff is
> entitled to a verdict . . . .

15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

### III. Discussion

"The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action."  Bourne v. Mapother & Mapother, P.S.C., 998 F. Supp.2d 495, 501 (S.D.W. Va. 2014) (quoting State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc., 461 S.E.2d 516, 523 (W. Va. 1995)) (Faber, J.); see also McNeely v. Wells Fargo Bank, N.A., 115 F. Supp.3d 779, 784 (S.D.W. Va. 2015) (same) (Goodwin, J.).  "[T]he WVCCPA is to be given a broad and liberal construction[.]"  Bourne, 998 F. Supp.2d at 500.

Oakley contends that defendants violated Sections 46A-2-127, 127(d), 127(f), and 127(h) of the WVCCPA which provide:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers.  Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> * * *
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding;

16

* * *

(f)  The use or distribution or sale of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by a court, an official or any other legally constituted or authorized authority, or which creates a false impression about its source, authorization or approval;

* * *

(h)  Any false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business.

W. Va. Code § 46A-2-127(d), (f), and (h).

In considering claims under the WVCCPA, courts often look to analogous cases decided under the Fair Debt Collection Practices Act (FDCPA), a federal law which the Supreme Court of Appeals of West Virginia has described as "nearly identical" to the WVCCPA.  See Fleet v. Webber Springs Owners Ass'n, Inc., 772 S.E.2d 369, 379 (W. Va. 2015); see also In re Thomas, CIVIL ACTION NO. 2:15-cv-08956, 2018 WL 4323927, at *2 (S.D.W. Va. Sept. 10, 2018) ("[I]n other cases under the WVCCPA, [the West Virginia Supreme Court of Appeals] has relied on case law interpreting the federal Fair Debt Collection Practices Act ("FDCPA") to explain the contours of the WVCCPA.") (Johnston, C.J.); Hill v. SCA Credit Services, Inc., Civil Action No. 5:14-cv-29565, 2015 WL 1808930, at *4 n.2 (S.D.W. Va. Apr. 21, 2015) ("Case law interpreting the FDCPA is helpful with respect to similarly-worded provisions [of the WVCCPA] and the general

17

goals of the statutes. . . . Courts must, nonetheless, apply the clear language of the WVCCPA, rather than import language from the FDCPA.") (Berger, J.).

> Under the FDCPA,
>
> in assessing whether a debt collector's representation is misleading, we view the representation "from the vantage of the least sophisticated consumer." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014) (internal quotation marks omitted). Under this standard, we consider how a "naive" consumer would interpret the statement. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). However, we do not give credit to "bizarre or idiosyncratic interpretations"; we assume "a quotient of reasonableness and . . . a basic level of understanding and willingness to read with care." Id.

Elyazidi v. Suntrust Bank, 780 F.3d 227, 234 (4th Cir. 2015). Courts must take care not to "'conflate lack of sophistication with unreasonableness.'" Ramsay v. Sawyer Property Mgmt. of Maryland LLC, 593 F. App'x 204, 208 (4th Cir. 2014) (quoting Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010)). In evaluating claims under the WVCCPA, courts have looked to the least sophisticated consumer standard. See, e.g., Weber v. Wells Fargo Bank, N.A., Civ. Action No. 3:20-CV-48, 2021 WL 833949, at *8 (N.D.W. Va. Mar. 4, 2021).

Defendants argue that plaintiff's claim fails on the merits—that is, the letter did not contain any "fraudulent, deceptive or misleading representation" within the meaning § 46A-2-127. They say that the letter accurately presented the

total amount of plaintiff's indebtedness under her loan terms as
of the date of the letter.  The court agrees.

Upon default, plaintiff owed reasonable collection costs.
She admitted as much.  See Oakley Depo. at 147-49.  The
Department of Education directed Coast to calculate collection
costs at a rate of 17.92% of the principal and interest due.
See Tyrell Dec. at ¶ 10; Buchanan Dec. at ¶¶ 15-16.
Furthermore, DOE required defendants to provide Oakley with a
total balance due, including principal, interest, and collection
costs.  See Tyrell Dec. at ¶ 9.  This is exactly what PRI did;
it calculated collection costs based on the collection cost rate
and formula set by DOE.  Plaintiff does not allege that the
costs were calculated incorrectly.  And, consistent with the
DOE's direction, PRI informed Oakley of the amount she would
need to pay to fully resolve her debt.  There was nothing false
or misleading in doing so.

When the court denied defendants' motions to dismiss, it
considered three different cases looking at analogous claims in
the FDCPA context.  In Reizner v. Pioneer Credit Recovery, Inc.,
the court concluded that similar allegations to those herein
passed muster at the pleading stage:

> Considering that the collection charge was allegedly
> contingent on the collection of the debt, Plaintiff
> claims that the collection charge could not be
> calculated, nor could it be determined as reasonable,
> at the time Defendant sent its collection letter.

> When taking these allegations as true, which the Court
> must at this stage of the proceedings, and under the
> least sophisticated debtor standard, Plaintiff has
> sufficiently stated a FDCPA claim in order to survive
> dismissal based on the allegedly false or misleading
> inclusion of a contingent fee that had yet to be
> charged, incurred, or due.

No. CV 18-16014 (JLL), 2019 WL 1569824, at *3 (D.N.J. Apr. 11,
2019) (citation omitted).  The court determined that "[t]o
conclude otherwise would be inappropriate at this early stage of
the proceedings where the Court only considers the pleadings and
where the parties have not had the benefit of discovery."  Id.

Reizner is not especially helpful at this juncture because
it dealt with a motion to dismiss which involves an entirely
different standard than the one relevant to a motion for summary
judgment.  See, e.g., Lujan v. Nat'l Wildlife Fed'n, 497 U.S.
871, 889 (1990) (An opinion decided on a motion to dismiss "is
of no relevance here, since it involved not a Rule 56 motion for
summary judgment but a Rule 12(b) motion to dismiss on the
pleadings.  The latter, unlike the former, presumes that general
allegations embrace those specific facts that are necessary to
support the claim.") (cleaned up).  The Reizner court emphasized
that the decision therein was driven by the standard governing a
motion to dismiss.  The Reizner court did not have the benefit
of the record before this court, in particular, ED's direction
on the information PCAs must include in collection letters and

the way collection costs are determined in the federal student
loan context.

Another case relied upon by the court, Francis v. General
Revenue Corp., No. 18-CV-6955 (BMC), 2020 WL 4586392, at *1
(E.D.N.Y. Aug. 10, 2020), did involve a motion for summary
judgment.  In that case, the court granted summary judgment to
the plaintiff, holding that the letter in that case was
deceptive.  See id.  Ultimately, the court found that it was
acceptable to list the collection charges, but deceptive to hide
the fact that they were contingent:

> I do not consider a reasonable, contingent,
> percentage-based collection fee to be improper in and
> of itself given plaintiff's broad obligation to pay
> "all attorney's fees and other reasonable collection
> costs."  However, defendant's failure to disclose the
> contingent nature of the collection cost – instead
> representing the fee as an out-of-pocket expense that
> the creditor has already paid, or at least definitely
> will pay in the future – was deceptive.

Id. at *4 (citation omitted).

In its earlier decision denying defendants' motion to
dismiss, the court was persuaded by the similarities in wording
between Oakley's letter and the letter in Francis.  Oakley v.
Coast Professional, Inc., 570 F. Supp.3d 365, 383 (S.D.W. Va.
2021).  However, the record now before the court highlights the
differences between this case and Francis and demonstrates why
that case is less helpful on summary judgment.  First, while
Francis did involve a student loan, it was not a federal direct

student loan.  Therefore, the Department of Education's
requirements were not at issue in that case.  Second, in this
case, the letter does elaborate on the fees and costs listed
with the following statement:  "This collection agency fee is
not due until the time of payment and the amount of the fee may
decrease at the time of payment depending on the amount that is
ultimately paid."  ECF No. 151-1.  It does not appear that the
letter in <u>Francis</u> contained a similar statement.

> [T]he collection letter represents the collection fee
> as definite when it is not.  Defendant is entitled to
> $1,680.04 if and only if it successfully collects the
> entire balance.  <u>If the collection letter explained
> that the collection fee was contingent on the
> collected amount, there would likely be no violation.</u>

<u>Francis</u>, 2020 WL 4586392, at *4 (emphasis added).

The final case considered by the court in its earlier order
was <u>Ossipova v. Pioneer Credit Recovery, Inc</u>., No. 1:18-EV-
11015-GHW, 2019 WL 6792318 (S.D.N.Y. Dec. 11, 2019).  Although
<u>Ossipova</u> was decided on a motion to dismiss, it was the only one
of the three cases dealing with a loan from the Department of
Education.  <u>See id.</u> at *1.  The court summarized Ossipova's
claim as follows:

> The gravamen of Plaintiff's complaint is that
> Pioneer's initial debt collection letter falsely
> represented that the $19,221.03 collection fee was due
> at the time the letter was sent.  These collection
> charges, Plaintiff argues, represented the contingency
> fee agreement between Pioneer and ED rather than a
> pre-paid, flat fee that Plaintiff must pay Pioneer.
> That is, Plaintiff alleges that the $19,221.03 fee was

22

an amount Pioneer could permissibly charge ED for the collection of Plaintiff's outstanding debt (and which was contingent upon Pioneer doing so), but which could not be passed on to Plaintiff until ED incurred this fee.  Further, Plaintiff argues that because these charges were contingent upon Pioneer collecting on Ossipova's outstanding debt; if (or when) any collection costs were due, Pioneer would have to calculate the amount she owed based on the percentage of her debt Pioneer actually collected, rather than the total amount of debt ED referred to Pioneer for collection.  But when Plaintiff received Pioneer's letter, Pioneer had not billed, charged, or been paid $19,221.03 by ED, nor had Pioneer filed an action in any court or been awarded the collection costs of Plaintiff's underlying debt.  Essentially, while Plaintiff does not dispute that she would be obligated to pay collection fees at some point in the future, she contends that no such fees could have been due when she received this initial collection letter, as Pioneer had not yet collected any debt from Plaintiff or incurred any expense in attempting to do so.

Accordingly, Plaintiff alleges that Pioneer's letter violated various provisions of the FDCPA, including (1) section 1692e, in that it was false and misleading for Pioneer to include the $19,221.03 collection charge she did not yet owe as part of the current balance due in its June 22, 2018 collection letter[.]

Id. at *2 (cleaned up).

The Ossipova court concluded that because the plaintiff's default triggered liability for reasonable collection costs, the inclusion of a reasonable collection fee—contingent or not—in the total balance was not misleading:

Pioneer indicated in their June 22, 2018 letter to Plaintiff after her default that her outstanding principal and interest totaled $78,968.86, and that the associated collection charge was 119,221.03 [sic]— exactly 24.34% of $78,968.86.  Given this, the Court finds it impossible to reconcile the conclusory

allegations in Plaintiff's complaint that she did not owe the collection costs identified in Pioneer's letter at the time she received it with the provisions of the MPN, the HEA, and ED regulations—which are incorporated by reference into her complaint—and which together belie Plaintiff's allegations. The agreed-upon terms of the MPN obligated Plaintiff to pay "reasonable collection fees and costs" that would become "immediately due and payable" upon her default and which would be governed by the HEA and applicable ED regulations. As a result, the Court concludes that Pioneer's inclusion of the $19,221.03 collection charge in its June 22, 2018 letter was neither false, deceptive, or misleading, nor did it constitute the use of unfair or unconscionable means to collect or attempt to collect on a debt.

Id. at *4-5. The facts in this case are most similar to Ossipova.

Like the court in Ossipova, the court finds that inclusion of the collection costs in the letter of July 12, 2019, was neither false nor misleading. The undisputed facts are that, upon Oakley's default, collection costs were due and payable immediately. Furthermore, the amount of the collection costs due, i.e., 17.92% of the total balance due, was the amount that ED determined a PCA should charge.[5] Therefore, the letter

---

[5] Plaintiff repeatedly falls back on her argument that defendants had not yet "earned" their contingency fee. However, the record is now clear that the collection costs ED is entitled to are not the same thing as the contingency fee that Coast earns when it collects debts on ED's behalf. The collection costs ED sought to recover in the amount of $11,431.47 were computed by multiplying the sum of Oakley's outstanding principal and interest as of the date of the letter by 17.92%, a collection cost rate set by ED. Those costs were due and payable upon default. While ED's ability to recover those fees might be "contingent" on Oakley's willingness to pay, the obligation

correctly stated the total amount that Oakley would need to pay to fully settle her debt as of July 12, 2019:  $75,223.17.  That total was comprised of principal in the amount of $51,033.10, interest in the amount of $12,758.20, and collection costs in the amount of $11,431.47.  The letter sought recovery of all the sums to which DOE was clearly and lawfully entitled.  Read in its entirety, the letter would not be misleading to the least sophisticated consumer.

The court finds persuasive a decision from the Northern District of Illinois, Bernal v. NRA Group, LLC, 16 C 1904, 2017 WL 4948544 (N.D. Ill. Nov. 1, 2017), aff'd, 930 F.3d 891 (7th Cir. 2019).  In that case, the court considered whether a collection letter seeking a collection fee which was contingent on collection violated the FDCPA.  See id. at *1.

> Bernal also argues that the contract did not allow Bernal to be charged a collection fee because, at the time the letter was sent, Six Flags had not yet incurred the fee, which was contingent on collection. Bernal cites no authority for his contention, but several district court decisions back him up. . . . These decisions reason that, when a contract makes a debtor responsible for collection costs "incurred" by the creditor, a debt collector may not characterize a contingent fee as a recoverable cost before it actually charges the fee to the creditor, which happens only if and when the debtor pays the principal amount due.

itself was not "contingent" on any future event.  By contrast, Coast's commission of 15.2% of any monies recovered would only be payable if any monies were recovered.  The "fees and costs" referenced in the letter is not the same thing as the commission Coast would earn.

That cannot be right.  As acknowledged by one of
those district court decisions, for purposes of
determining whether the collection fee could be sought
in a debt collection letter also seeking the principal
amount due, the distinction between contingent and
non-contingent fees "may . . . seem trivial, or even
ridiculous," for the distinction would mean "that the
debt collector could not legally collect all sums due
in a single transaction," but rather could collect the
collection fee only after the debtor paid the
principal amount. . . .  Aside from being trivial or
ridiculous, that distinction certainly makes no
difference to a debtor.  How could it possibly harm or
mislead the debtor for a debt collector to set forth
both amounts (the principal amount due and the
collection fee) in a single letter, as opposed to
first collecting the original debt and only then
revealing and seeking payment of the collection fee?
As Seventh Circuit precedent suggests, it cannot.

* * *

[A] debt collector in NRA's shoes likely would mislead
a debtor in Bernal's shoes, and thus likely would
violate the FDCPA, if it failed to inform him that he
would have to pay a contingent fee upon making good on
the original debt. . . .  So, under the above-cited
district court decisions, a collection letter could
not straightforwardly describe a contingent fee as a
cost, but still would somehow have to make clear that
the fee would become a cost if the debtor paid all or
part of the principal amount owed.  That makes no
sense, either practically or legally.  Simply
identifying the fee as a cost, upfront, gives the
debtor a better understanding of his or her
obligations.  The contractual term "incurred" should
not be interpreted so narrowly as to keep debtors
either partially or entirely in the dark.  Instead,
"incurred" means not only those collection costs that
have already been billed to the creditor, but also
those that will necessarily be billed to the creditor
if the debtor pays the principal amount.

Id. at *3-4.

Oakley's argument to the contrary, the letter also adequately informed plaintiff that fees and costs could be less than the amount indicated on the front of the letter.  The letter must be read in its entirety and the back of the letter stated that fees and costs may be less.  See, e.g., McStay v. I.C. System, Inc., 308 F.3d 188, 191 (2d Cir. 2002) ("[W]hen a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back."); see also Stokes v. Transworld Sys., Civ. No. (DRD) 12-6805, 2013 WL 592276, at *5 (D.N.J. Feb. 14, 2013) ("Even the least sophisticated debtor is bound to read collection notices in their entirety.").

To be sure, the letter would have been false or misleading if PRI had not included the collection costs in the letter because payment of just principal and interest would not fully resolve Oakley's debt.  In addressing the problems with an argument like the one Oakley makes herein, the United States Court of Appeals for the Seventh Circuit wrote:

> Let's imagine Bernal is correct.  In that scenario NRA must first send the debtor a letter demanding payment of the debt.  Then, after the debtor writes a check, Six Flags can pay NRA the collection fee.  At that point NRA can finally send the debtor a second letter demanding collection costs.  But in this scenario, the first letter would mislead the debtor about how much he needs to pay in total, so this could itself violate the FDCPA.  Cf. Fields v. Wilber Law

27

Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may . . . state those fees and costs and include that amount in the dunning letter. . . . Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt.). Bernal claims that NRA violated the statute, but his alternative could be just as problematic.

Bernal v. NRA Group, LLC, 930 F.3d 891, 896 (7th Cir. 2019); see also Bernal v. NRA Group, LLC, 16 C 1904, 2017 WL 4948544 (N.D. Ill. Nov. 1, 2017), aff'd, 930 F.3d 891 (7th Cir. 2019). The court finds the Bernal courts' analyses persuasive.[6]

During her deposition, Oakley acknowledged the problems associated with failing to include collection costs at the outset.

    Q:   Okay.  So if all three of those things happened
         and then the Department of Education hired a
         private collection agency such as Performant to
         reach out to you to let you know what you owed,
         do you think that it would be fair for them to
         withhold the fact that you actually owed some
         amount in collection costs?

    A:   No.  That's not fair for them to withhold that.

    Q:   Okay.  So if in fact you did owe collection costs
         in addition to, say, a principal balance and
         accrued interest, you would want Performant, in

---

[6] Plaintiff's suggested modifications to the letter are misleading.  See ECF No. 157 at 16.  The undisputed evidence in the case is that, upon default, collection costs become due. Therefore, they are a part of the current balance and suggesting otherwise might give rise to a claim under the WVCCPA.  And, to the extent plaintiff's proposal seeks to provide more information, that is, in essence, a complaint of nondisclosure.

> this example, to tell you that you owed that
> money.
>
> A:   Yes.
>
> Q:   And sort of the alternative to that, right, would
>      be somebody saying, "Look you owe" – – and it
>      could be Performant in this example saying that
>      you owe this outstanding principal and interest
>      that has accrued on your loans, right?
>
>      And in, say, this hypothetical that amount was
>      $250.  And, you know, you received that letter,
>      and you happened to have $250, and you paid that
>      outstanding principal and accrued interest.
>
>      Would you then be upset if you received a
>      separate piece of correspondence from, again,
>      Performant, in this example, that said, "Oh, by
>      the way, you owe us 50 extra bucks for collection
>      costs"?
>
> A:   Sure.

Oakley Depo. at 150-51.

In her deposition, Oakley did not point to any false or misleading information in the letter.  Rather, she testified that she wanted _more_ information about the fees and costs and she questioned the reasonableness of that amount.

> Q:   I would like to hear in your own words what this
>      is all about.
>
> A:   Well, in 2019 – – I'm not sure exactly what month
>      it was, maybe August or September or something –
>      – I got a letter from Performant Recovery saying
>      that I owed almost $80,000.
>
>      And I was like, "What in the world is this,"
>      because I knew – – I mean, even looking at these
>      amounts, that's not $80,000.  And I know there's
>      interest and stuff.  But, to me, that's not
>      reasonable to double it.

So I freaked out not knowing what in the world
was going on with it.  And the fees that were
listed on there had no explanation as to what the
fees were.  It just said, "Fees," and I'm just -
- and so that's what prompted me to contact an
attorney, because I had no idea what was going
on.

* * *

Q:   And you said that there was a section on the
     letter that said something about fees.

A:   Yes.

Q:   But it didn't give you any more information about
     the fees?

A:   Correct.

Q:   And that was - -

A:   And I sent a certified letter requesting what
     those fees were for and did not get an answer.

Q:   Okay.  So in other words, the letter did not have
     enough information to provide to you about what
     those fees were.

A:   Correct.

Q:   So is it part of your complaint, then, that that
     letter should have included additional
     information?

A:   Yes.

Q:   What additional information would you have liked
     to have seen in that letter?

A:   Well, no one in their right mind is just going to
     pay $12,000 in fees - - that's roughly - - you
     know, without knowing what they are, I mean, and
     no explanation.  No one is going to pay that.

Oakley Depo. at 97-99.

The fact that the letter to Oakley could have provided more information does not make it false or misleading under the WVCCPA.  See, e.g., Stokes v. Transworld Sys., Civ. No. (DRD) 12-6805, 2013 WL 592276, at *5 (D.N.J. Feb. 14, 2013) ("To be sure, the second collection notice sent to Ms. Stokes could have been clearer and more informative. . . .  However, the bar is impermissible confusion and overshadowing, not a ceiling of crystal clear instruction and reiteration.").  Nor does the WVCCPA provide for liability for nondisclosure(s).[7]

Insofar as Oakley argues that the letter gave the impression that her debt was fixed and nonnegotiable, the court does not agree.  The letter invites Oakley to contact PRI to discuss her options for resolving her debt.  However, as the court noted in its prior opinion, DOE was "under no obligation to accept a reduced amount."  Coast, 570 F. Supp.3d at 383.  Nor is there any requirement in the WVCCPA or otherwise that requires a debt collector to disclose its authority to compromise a debt.  Viewed properly, this is a nondisclosure claim cloaked as a misrepresentation claim.

Finally, there is no merit to Oakley's claim under West Virginia Code § 46A-2-127(f) that the letter "created a false

---

[7] And, as the court cautioned in its earlier order, any claim based upon nondisclosure might well be preempted by the HEA.  See Oakley v. Coast Professional, Inc., 570 F. Supp.3d 365, 376-78 (S.D.W. Va. 2021).

impression . . . that the government, via the Department of Education, agreed with and approved of the amount demanded in the collection letter when in fact the 'current balance' was calculated by Defendants and Defendants did not secure Department of Education review or approval of the collection letters referenced in this matter."  ECF No. 56 at ¶ 99.  First, the undisputed evidence in the record demonstrates that DOE <u>did</u> approve the letter.  Second, given the DOE's direction to PCAs regarding calculation of collection costs, as well as what to include in collection letters, ED did indicate the entire balance in the letter is due and payable.  The Tyrell declaration confirms as much.  Furthermore, a fair reading of the letter makes it clear that the letter is coming from PRI, not ED, so there is no false impression about the letter's source, authorization, or approval.[8]

---

[8] Oakley does not address defendants' argument in their motions for summary judgment as to her claim under West Virginia Code § 46A-2-217(f).  <u>See</u> ECF No. 157 at 3 (mentioning only §§ 46A-2-127(d) and 46A-2-217(h)).  In the event she has not voluntarily abandoned a claim under § 46A—2-217(f), it would be subject to waiver.  <u>See</u> <u>Nichols v. Michigan City Plant Plan. Dep't</u>, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); <u>see also</u> <u>Grant-Fletch v. McMullen & Drury, P.A.</u>, 964 F. Supp.2d 514, 525 (D. Md. 2013) (holding that plaintiff abandoned an argument b not opposing motion for summary judgment on the issue).

## IV.  Conclusion

For the reasons stated above, there is insufficient
evidence that would allow a reasonable jury to return a verdict
finding that the letter sent to Oakley violated either the
general or specific provisions of the WVCCPA.  Accordingly, the
court granted defendants' motions for summary judgment.  Given
the court's conclusion that the letter does not violate the
WVCCPA, the court has not reached the other arguments advanced
by defendants.

The Clerk is directed to send a copy of this Memorandum
Opinion to counsel of record.

**IT IS SO ORDERED** this 31st day of October, 2023.

ENTER:

David A. Faber
Senior United States District Judge